G. M. LEASING CORP.,
Plaintiff-Appellee,

and

George I. Norman III,
Plaintiff-Intervenor,

v.

The UNITED STATES of America et al.,
Defendants-Appellants.

No. 74–1436.

United States Court of Appeals,
Tenth Circuit.

Aug. 19, 1977.

1012

Richard J. Leedy, Salt Lake City, Utah, for plaintiff-appellee.

Before HILL, SETH and BARRETT, Circuit Judges.

HILL, Circuit Judge.

We have this case on remand, *G. M. Leasing Corp. v. United States,* 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977), and must address the questions of money damages against agents of the Internal Revenue Service (IRS) for violations of Fourth Amendment rights of G. M. Leasing Corp. (Corporation) committed in levying on property pursuant to a jeopardy assessment and of the applicability of the doctrine of official immunity.

We will recount the facts and prior proceedings briefly.[1] George I. Norman, Jr., failed to file proper personal income tax returns for the calendar years 1970 and 1971. A subsequent investigation resulted in jeopardy assessments against Norman and his wife in excess of $1,000,000. IRS determined that Corporation, ostensibly a luxury car and boat leasing business, was Norman's alter ego and that the corporate assets were subject to levy to satisfy Norman's tax liability. IRS levied upon certain of Norman's personal assets and certain assets of Corporation. We are presently concerned with activities of IRS agents in effecting the levy on assets of Corporation contained within a cottage used as its business office in Salt Lake City, Utah. On March 21, 1973, agents came to the cottage and gained entry with the aid of a locksmith. Norman's son, George I. Norman III, who was using the cottage as a residence, arrived at that point and inquired what the agents were doing. As a result of their uncertainty as to whether the cottage was a residence or a business, the agents left without seizing any property. They returned on March 23, 1973, again entered with the aid of a locksmith, and seized the furnishings and some business records of Corporation.

---

1. The facts are more fully set out in the prior opinions. *G. M. Leasing Corp. v. United States,* 514 F.2d 935 (10th Cir. 1975), 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977).

This action, originally filed May 3, 1973, in the United States District Court for the District of Utah, challenged the jeopardy assessments against Norman and his wife, challenged the IRS determination that Corporation was Norman's alter ego, and claimed damages against individual IRS officers for their warrantless seizure of assets.[2] The United States counterclaimed for foreclosure on the jeopardy assessment. After a non-jury trial, the district court found, *inter alia,* that the assessment was erroneous, the Normans had no tax liability for the years 1970 and 1971, Corporation was not Norman's alter ego, the agents' activities constituted an illegal search and seizure, Agent Philip J. Clayton participated in the search and seizure with malice, and Corporation was entitled to recover money damages in an undetermined amount. The district court denied the government's counterclaim. On these issues, we reversed the district court. *G. M. Leasing Corp. v. United States,* 514 F.2d 935 (10th Cir. 1975).

The Supreme Court granted certiorari on Corporation's petition, 423 U.S. 1031, 96 S.Ct. 561, 46 L.Ed.2d 404 (1975), to decide whether the IRS agents violated Corporation's Fourth Amendment rights in conducting the seizure of assets. The Court determined that although the agents properly levied upon Corporation's property located in places where no privacy interest was involved,[3] the warrantless entry into the cottage constituted an unreasonable search.

We are now directed to consider the issue of damages against the individual agents.

The case of *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), makes it clear that a cause of action for damages will lie against a federal officer or agent who violates Fourth Amendment rights under color of his authority. The remaining question is whether the doctrine of official immunity shields the IRS agents from such an action, for it is now the law of the case that they violated Corporation's Fourth Amendment rights in entering the cottage without a search warrant.

 A modern statement of the doctrine of official immunity is found in *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). The Court there upheld a claim of absolute privilege by the director of the Office of Rent Stabilization against a libel action for publishing a press release detailing reasons for termination of personnel. The Court said that the doctrine of official immunity, largely of judicial making, represents a balance between conflicting interests: the right of individual citizens to seek redress for wrongs committed by officials of the government and the need for such officials to be free to exercise their duties unfettered by the prospect of being called to defend themselves against damage suits for acts done in the course of their duties. It is applied when, as a policy matter, the latter interest outweighs the former. The Court reasoned that, given the complexities of government with the delegation and redelegation of authority, the protection of the doctrine should not be limited to "high government officials." So long as an act is done within the scope of an officer's authority, the pertinent inquiry is whether the act involves the exercise of discretion by a government officer which justifies the protection of the doctrine.

We applied the doctrine in *Garner v. Rathburn,* 346 F.2d 55 (10th Cir. 1965). In that case, an injured military laborer sought to recover against the civilian supervisor of a military paving maintenance crew, alleging that the supervisor was negligent in causing defective equipment to be used. We held the suit was barred by the

---

**2.** Norman's son was permitted to intervene and filed a claim with regard to stock seized by the IRS officers to which he claimed ownership. His claim has been previously disposed of. *G. M. Leasing Corp. v. United States, supra.*

**3.** The IRS had also levied upon several luxury automobiles titled to Corporation. The Court said, "The seizures of the automobiles in this case took place on public streets, parking lots, or other open places, and did not involve any invasion of privacy." 429 U.S. at 351, 97 S.Ct. at 628, 50 L.Ed.2d at 543.

doctrine of official immunity; selecting equipment was within the scope of the supervisor's duties and demanded exercise of judgment and discretion of such nature as to warrant the absolute protection of the doctrine. We discussed the nature of official immunity:

> The federal standard of immunity indicates that officials of the Federal Government are not personally liable for alleged torts which result from acts done within the framework or scope of their duties which necessarily involve the exercise of discretion which public policy requires be made without fear of personal liability. . . . The purpose for the rule of the immunity is obvious. Government officials must be free to perform their duties unafraid that what they do may result in personal damage suits. (Footnotes omitted.)

346 F.2d at 56.

■ The first question in applying the doctrine, whether the conduct was in the scope of an officer's duties, has been the source of some confusion. As Judge Hand wrote in *Gregoire v. Biddle,* 177 F.2d 579 (2d Cir. 1949):

> [I]t can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within the scope of his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him.

177 F.2d at 581. It is thus clear that so long as a given function is within the scope of an officer's authority, that he performs it unlawfully does not carry it outside that scope.

It was among the duties of the IRS officers in the present case to levy on property pursuant to jeopardy assessments. Although they did so unconstitutionally, they were acting within the scope of their duties.

■ Is the duty of levying upon property in satisfaction of IRS jeopardy assessments of such a nature as to justify the absolute protection of the doctrine? In *Sowders v. Damron,* 457 F.2d 1182 (10th Cir. 1972), we held the doctrine of official immunity protected an IRS officer from civil liability for fraudulently obtaining the signature of a taxpayer on a return. The IRS agents cite this case for the proposition that they are entitled to official immunity for all acts done within the scope of their duties. It may well be, however, that the scope of an officer's duties includes acts for which he is entitled to immunity as well as acts for which he is not, for the nature of the particular duty performed determines the applicability of the doctrine. *Doe v. McMillan,* 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973); *Barr v. Matteo, supra; Jackson v. Kelly,* 557 F.2d 735 (10th Cir. 1977). In the present case, the tax liability had been established by the jeopardy assessments, and it had been determined that the assets of Corporation were subject to levy to satisfy Norman's obligation. The agents were directed to seize the assets. The agents' acts were ministerial: The policy decisions had been made; the agents were only to implement the levy. We do not believe the agents, in levying on Corporation's assets, were performing a function "which necessarily involve[d] the exercise of discretion which public policy requires be made without fear of personal liability." *Garner v. Rathburn, supra.* The fearless, vigorous, and effective administration of the policies of government spoken of in *Barr v. Matteo* can be pursued without the protection of absolute immunity here. A contrary holding would leave aggrieved citizens without a remedy even for malicious Fourth Amendment incursions.[4]

4. As the Supreme Court pointed out: "Indeed, one of the primary evils intended to be elimina-

ted by the Fourth Amendment was the massive intrusion on privacy undertaken in the collec-

That is not to say that IRS officers are entitled to no protection whatsoever. In *Bivens v. Six Unknown Federal Narcotics Agents*, 456 F.2d 1339 (2d Cir. 1972), the Second Circuit similarly rejected a claim of absolute immunity to suit for Fourth Amendment incursions by federal police officers. However, the court held that an officer is protected from liability if he acts on a good faith belief that his conduct is not improper, so long as that belief is reasonable. An analogous "limited immunity" is recognized in suits against state officers brought under 42 U.S.C. § 1983. *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Such a rule strikes an equitable balance between the conflicting interests dealt with previously: The right of private citizens to seek judicial redress is preserved as to malicious abuses; the effective function of government is unhampered as long as conduct is based upon an officer's honest and reasonable belief in its lawfulness.

We believe the record is sufficient to support a determination of the agents' good faith.[5] In this regard, Corporation argues that in conducting the audit and determining the assessment, the officers were motivated by a vendetta against Norman. These matters, even assuming their correctness, are peripheral; the issue is not the officers' attitude generally but whether they believed they were acting in accordance with the law in entering the cottage without a warrant.

■ Of principal importance is the undisputed fact that the officers conducted the seizure upon the advice of IRS regional counsel. It makes no sense to expect the officers to second-guess the IRS regional attorney who counseled them that the seizure could be undertaken as it was. In a similar case, *Jackson v. Wise*, 385 F.Supp. 1159 (D.Utah 1974), the fact that an IRS agent acted on advice of counsel was held sufficient to support a finding that his actions were in good faith. We are satisfied that the officers entered the cottage on the reasonable and good faith belief that their conduct was lawful. Corporation is not entitled to recover damages against them.

The case is reversed and remanded to the district court with directions to dismiss the action.

tion of taxes pursuant to general warrants and writs of assistance." 429 U.S. at 355, 97 S.Ct. at 630, 50 L.Ed.2d at 545.

**5.** The district court found that "Defendant Philip Clayton maliciously committed said forced entry, and search and seizure." We specifically rejected that finding, stating "[p]art of the basis for the trial court's ruling . . . appears to be a finding that appellant Clayton's participation in the search and seizure was of a malicious character. There is no evidence in the record to support this finding, and we must hold that it is clearly erroneous." 514 F.2d at 940–941.