Hans BOTHKE, Plaintiff-Appellant,

v.

FLUOR ENGINEERS AND CONSTRUCTORS, INC., et al., Defendants,

and

W.J. Terry, Defendant-Appellee.

No. 81–5457.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1982.

Decided Jan. 24, 1983.

Hans Bothke, in pro. per.

Jonathan S. Cohen, John Dudeck, Washington, D.C., for defendant-appellee.

Before WRIGHT, KENNEDY, and BOOCHEVER, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Bothke, a pro se litigant, appeals from an adverse summary judgment in his suit for damages against an Internal Revenue Service official for claimed constitutional violations in the allegedly wrongful levy of his wages. The district court held that the IRS official was absolutely immune or, alternatively, was protected by qualified immunity because she acted in good faith and within the scope of her authority. This panel affirmed in a memorandum disposition.

The case is now before us on petition for rehearing. Because there seems to be some uncertainty in this circuit over the type of immunity to which IRS agents are entitled, a fuller treatment of the matter is required. We construe Bothke's petition for rehearing as one for reconsideration, which is granted. The memorandum disposition of January 24, 1983 is withdrawn.

FACTS

Plaintiff-appellant Bothke filed a timely but unusual income tax return for 1977. On several lines he entered asterisks in lieu of dollar amounts. Under the amount to be refunded, he entered $1154.62, an amount corresponding to taxes his employer had withheld from his salary as shown on the W–2 form accompanying the return.

The asterisks were referenced to a lengthy exegesis on why he had not provided the information. The substance was that Bothke felt the IRS had mistreated him over his 1976 return by ignoring the figures he provided, by failing to help resolve questions about the return, and by assessing a deficiency before according him the prior administrative hearing its litera-

ture allegedly indicated he was entitled to. It went on to state that he had concluded the IRS had acted in bad faith and deprived him of due process and, to protect his constitutional rights, on this return he was exercising his First, Fourth, Fifth, Sixth, Eighth, Ninth and Tenth Amendment rights not to provide the information.

The IRS center at Fresno reviewed Bothke's return. On March 5, 1979, it sent him a notice of "Correction to Arithmetic" indicating that "based on the information received" the IRS had adjusted tax due on the return from zero to $6755.80, which, after subtracting withholdings and adding penalty and interest, left a balance due of $6177.87. Bothke responded on March 15 with an objection to the notice on numerous grounds.

On May 2, a letter from the director of the Fresno IRS center told Bothke that the refund claimed on his tax return had been disallowed. This document is not in the appellate record, but it apparently referred to alleged claims by Bothke that the tax laws were unconstitutional.

On June 6, the manager of the tax control unit in Santa Ana sent another letter stating that although notices and demands had been made for payment of Bothke's 1977 taxes, no money had been received. It warned that unless within ten days the IRS received the amount due or heard from the taxpayer, his wages could be levied and his property seized. Eight days after the ten-day notice, Bothke wrote to the Fresno center objecting to both documents and denying he had challenged the constitutionality of the tax laws.

Bothke's case was later turned over to the field office at which defendant Terry worked. On August 3, 1979, Terry was given Bothke's Tax Delinquent Account (TDA). Her assigned duties were to investigate and collect delinquent accounts.

The TDA, a one-page agency form, had six printed lines to show some of the history of the case. The file did not contain a copy of Bothke's tax return. It is unclear what other documents, if any, were in the file sent to the field office.

Terry twice submitted a "Recommendation for Nonfiling of Notice of Tax Lien" noting, "Because of sensitivity of case, it is in best interest not to file F[ederal] T[ax] L[ien] until extensive research completed on T[ax] P[ayer] claims." During the litigation she stated that by "sensitivity" she was referring to the volume of correspondence the IRS had received from Bothke.

She made several requests to the Fresno IRS Center for a copy of Bothke's return. Her handwritten notations on the "TDA History Record" said, "Wanted to have a copy before seeing T[ax] P[ayer] because of delicacy [blank] of situation."

When no copy of the tax return arrived after some time, she elected to proceed without it. She visited Bothke's home on November 21, 1979 and, in his absence, left instructions for him to call. He did so, again protesting that the IRS had violated his rights. Terry told him that the tax must be paid and that the IRS would communicate with him.

On November 26, 1979, Terry served on his employer a levy of Bothke's wages. On November 29, she received a protest from Bothke by certified mail. He also made a written protest to his employer. The levy of $3,415.43 was executed several days later.

Bothke resigned from his job to prevent the further attachment of his wages. He then filed an amended return for 1977, using dollar amounts instead of asterisks. It indicated that a refund was due from the amounts withheld and levied. When Bothke sued another IRS agent regarding levy of other property, the Service elected as a policy matter to abate any then-existing assessment and release any liens with respect to his 1977 taxes.

He brought this suit in federal district court against his employer, the assistant legal counsel for his employer who had accepted the levy, and IRS agent Terry. He alleged violations of his constitutional

rights and sought compensatory and punitive damages.[1]

The first two defendants were dismissed early from the case. On the magistrate's recommendation, the trial judge rendered summary judgment for defendant Terry, on the ground that she was either absolutely or qualifiedly immune, and dismissed the action.

## I. *Absolute Immunity*

Executive officials have long enjoyed some form of immunity for acts performed in the course of their official duties. The underlying rationales are (1) the injustice of imposing personal liability on one whose public office obliges the exercise of discretion and (2) the danger that potential liability will compromise the forthright performance of official duties. *See, e.g., Scheuer v. Rhodes,* 416 U.S. 232, 239–40, 94 S.Ct. 1683, 1688, 40 L.Ed.2d 90 (1974).

The rules governing official immunity are largely of judicial making and have changed considerably over the years. Earlier cases wrestled with the issue with varying results. *See id.* 416 U.S. at 241, 94 S.Ct. at 1689. In some instances courts did not foreclose recovery on immunity grounds, *see, e.g., Bates v. Clark,* 95 U.S. 204, 24 L.Ed. 471 (1877), and were reluctant to formulate a rule that would do so irrespective of the circumstances, *see O'Campo v. Hardisty,* 262 F.2d 621, 625 (9th Cir.1958).

Eventually, executive officials performing discretionary functions were protected from damage suits by absolute official immunity, if they had acted within the "outer perimeter" of their duties. *E.g., Barr v. Matteo,* 360 U.S. 564, 575, 79 S.Ct. 1335,

1341, 3 L.Ed.2d 1434 (1959) (opinion of Harlan, J.).

This general rule was applied to IRS agents. *Sowders v. Damron,* 457 F.2d 1182, 1184 (10th Cir.1972); *Bridges v. IRS,* 433 F.2d 299, 300 (5th Cir.1970); *David v. Cohen,* 407 F.2d 1268, 1271–72 & n. 2 (D.C.Cir. 1969); *Bershad v. Wood,* 290 F.2d 714, 716, 719 (9th Cir.1961).

A major change occurred when the Supreme Court concluded that absolute immunity was inappropriate for state executive officials sued under 42 U.S.C. § 1983 for violating federal rights. *Scheuer v. Rhodes,* 416 U.S. 232, 238–49, 94 S.Ct. 1683, 1687–93, 40 L.Ed.2d 90 (1974). The Court recognized that Congress had not intended to abrogate entirely the immunity accorded some officials by common law. *Id.* at 243, 94 S.Ct. at 1690. While judges and legislators acting within their traditional roles continued to enjoy absolute immunity, *id.* at 243–44, 94 S.Ct. at 1690, state executive officials would have only qualified immunity. *Id.* at 247–48, 94 S.Ct. at 1692.

The Court left the immunity question for federal officials to the courts of appeals when it acknowledged a damages remedy against those persons in suits for federal constitutional violations. *Bivens v. Six Unknown Named Federal Narcotics Agents,* 403 U.S. 388, 390–98, 91 S.Ct. 1999, 2001–06, 29 L.Ed.2d 619 (1971). This circuit reasoned that immunity accorded federal officials in *Bivens* actions should be no greater than that accorded state officials under section 1983 for identical violations. *Mark v. Groff,* 521 F.2d 1376, 1380 (9th Cir.1975).

Quoting *Mark v. Groff,* the Supreme Court agreed with this court and most cir-

---

**1.** After reviewing the record and listening to Bothke's oral argument, we are satisfied that this lawsuit and his misguided, unorthodox 1977 tax return were not frivolous attempts solely to challenge or burden the tax system or harass its agents. Rather, his predominant theme has been that this country's laws are just and that government agents must conform to them, a matter of importance to him as an immigrant who has lived under totalitarian regimes in Eastern Europe.

Bothke emphasized below that he was suing agent Terry individually for allegedly acting in

violation of legal duties and was not suing the United States. At a hearing the magistrate rejected Terry's sovereign immunity defense, and correctly so. Defendant's argument, that the suit was really against the government because 26 U.S.C. § 7423 authorizes reimbursement of IRS agents for all damages recovered from them for acts done in performance of official duties, was specious. *Cf. also United States v. Nunnally Investment Co.,* 316 U.S. 258, 260, 62 S.Ct. 1064, 1065, 86 L.Ed. 1455 (1942).

cuits, which had reached similar conclusions. *Butz v. Economou,* 438 U.S. 478, 486 & n. 9, 498–500, 505–07, 98 S.Ct. 2894, 2900 & n. 9, 2906–07, 2910–11, 57 L.Ed.2d 895 (1978). A different holding would "stand the constitutional scheme on its head." *Id.* at 504, 98 S.Ct. at 2909. Qualified immunity for federal executive officials struck a balance between the interests underlying immunity and the need for a remedy for constitutional violations. *Id.* at 497, 504–06, 98 S.Ct. at 2909–11.

Significantly for our purposes here, *Mark v. Groff* was a suit against IRS officials, as were three of the other circuit cases cited and followed in *Butz. See Weir v. Muller,* 527 F.2d 872, 874 & n. 1 (5th Cir.1976)[2]; *Black v. United States,* 534 F.2d 524, 527 (2d Cir.1976); *G.M. Leasing Corp. v. United States,* 560 F.2d 1011, 1015 (10th Cir.1977), *cert. denied,* 435 U.S. 923, 98 S.Ct. 1485, 55 L.Ed.2d 516 (1978).

The Supreme Court seemingly accepted no more than qualified immunity for IRS officials in the remand that preceded the last-mentioned case. *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 360, 97 S.Ct. 619, 632, 50 L.Ed.2d 530 (1977). The Fourth Circuit also had selected the qualified immunity standard for IRS officials. *White v. Boyle,* 538 F.2d 1077, 1080 (4th Cir.1976).

After *Butz,* circuit cases have continued to apply the qualified immunity standard to tax officials sued for constitutional torts. *See Hall v. United States,* 704 F.2d 246, 249, 250 & n. 2 (6th Cir.1983) (levy without stat-utory deficiency notice); *Granger v. Marek,* 583 F.2d 781, 784 (6th Cir.1978).

Cases in this circuit also have applied that standard. *Hutchinson v. United States,* 677 F.2d 1322, 1328 (9th Cir.1982) (qualified immunity for activities including levies); *Miller v. DeLaune,* 602 F.2d 198, 199 (9th Cir. 1979).

Apparently the only exception was a brief per curiam opinion in this circuit, *Stankevitz v. IRS,* 640 F.2d 205 (9th Cir. 1981),[3] the case relied on by the court below in holding Terry absolutely immune. *Stankevitz* accorded absolute immunity to IRS officials who audited the plaintiff's tax return and assessed a deficiency.

In so doing, the opinion followed another part of *Butz,* which stated that executive officials have absolute immunity if, in an administrative proceeding, they assume a role analogous to that of a judge or prosecutor in a traditional trial setting. 438 U.S. at 508–17, 98 S.Ct. at 2911–16. Quoting *Butz, Stankevitz* accorded the IRS defendants absolute immunity because they were " 'responsible for the decision to initiate or continue a proceeding subject to agency adjudication.' " 640 F.2d at 206 (quoting 438 U.S. at 516, 98 S.Ct. at 2916).

Taken out of context, this line quoted from *Butz* might easily be read to imply a broader spectrum of immunity than the Supreme Court intended. In using the term "proceeding subject to agency adjudication," *Butz* was not referring broadly to an official's exercise of judgment in the course of agency action directed at a private per-

---

**2.** The Fifth Circuit's attempt to overrule this case insofar as it may have implied a right of action under the due process clause of the Fifth Amendment was reversed by the Supreme Court. *Davis v. Passman,* 571 F.2d 793, 801 (5th Cir.1978), *reversed,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).

**3.** One other Ninth Circuit case, in a footnote, cited *Bershad v. Wood* as an example of a case granting absolute quasi-judicial immunity to some officials other than judges. *Pomerantz v. County of Los Angeles,* 674 F.2d 1288, 1291 n. 1 (9th Cir.1982). The immunity in *Bershad* was not quasi-judicial, but the then-existing absolute official immunity for executive officers. The *Pomerantz* court did not discuss the inter-vening changes in the law wrought by *Scheuer v. Rhodes, Butz, Mark v. Groff,* and related cases. We do not, however, criticize the holding in *Pomerantz* that jury administrators rendering decisions as to eligibility of prospective jurors were cloaked with quasi-judicial immunity.

A comparable oversight occurred with regard to the current scope of executive immunity in general in a criminal case against an executive official adverting to civil liability by way of analogy. *See Clifton v. Cox,* 549 F.2d 722, 726 (9th Cir.1977) ("It is well-settled that a federal official cannot be held personally liable in a civil suit for acts committed within the outer perimeter of his line of duty").

son. "Adjudication" was a technical term for a quasi-judicial, formal, on-the-record proceeding under the Administrative Procedure Act. *See* 5 U.S.C. §§ 554–557.

The quasi-judicial absolute immunity *Butz* accorded certain executive officials was predicated on the close similarity of this formal agency adjudication to a traditional courtroom trial. The Supreme Court recently re-emphasized that absolute immunity for participants in judicial proceedings "stem[s] 'from the characteristics of the judicial process.'" *Briscoe v. LaHue,* —— U.S. ——, ——, 103 S.Ct. 1108, 1115–16, 75 L.Ed.2d 96 (1983) (quoting *Butz,* 438 U.S. at 512, 98 S.Ct. at 2913). *See also Sellars v. Procunier,* 641 F.2d 1295, 1298–1300 & nn. 6–9 (9th Cir.), *cert. denied,* 454 U.S. 1102, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981).

■ Formal administrative adjudication shares with judge-supervised trials two key qualities that diminish the need for individual suits to correct constitutional transgressions: (1) the impartiality of the decision maker and (2) the reliability of the information forming the basis of the decision. *See Butz,* 438 U.S. at 512–13, 98 S.Ct. at 2913–14. Safeguards inherent in both forums foster these qualities.

The first quality is fostered in formal agency adjudication by the checks and balances afforded when a different person assumes the roles comparable to those of prosecutor and judge, with the adjudicator independent of agency control. Hearing examiners are neither required to perform prosecutorial and investigative functions inconsistent with their judicial role nor to answer to those who do. *Id.* at 513–14, 98 S.Ct. at 2914–15. This unbiased adjudicator provides a check on agency zeal. *Id.* at 515, 98 S.Ct. at 2915. One group of quasi-prosecutorial agency officials immunized in *Butz* were those who brought a proceeding to *seek* sanctions. *Id.* at 515, 98 S.Ct. at 2915. They did not *impose* the sanctions.

The second quality is fostered by having the transcript and exhibits of oral and documentary evidence constitute the exclusive record on which the decision must be based.

The decision maker must explain the decision with findings and conclusions. An adversarial procedure allows cross-examination of witnesses, a challenge to the government's theories, and the sobering requirement of airing these theories in a public forum. *Id.* at 512–13, 517, 98 S.Ct. at 2913–14, 2916.

The disinterested examiner may accept or reject the government's theories, after hearing both sides and all relevant evidence. *Id.* at 517, 98 S.Ct. at 2916. The other agency "prosecutorial" personnel granted absolute immunity in *Butz* were those who present evidence in an agency hearing, the purpose being to encourage the fullest possible presentation of evidence to the decision maker. *See id.*

■ These two qualities are conspicuously absent from Terry's activities, as they will typically be from an agency "proceeding" in the broad sense that is not subject to the safeguards of formal adjudication. First, Terry was not, nor was she restrained by, an adjudicator independent of agency control and of a conflicting prosecutorial role. The role she played, if analogized to a traditional trial, was an amalgam of the roles of prosecutor, judge, jury, and marshal executing the judgment as well, as her duties included agency investigation and enforcement, judgmental functions, assessment of information, and execution of the levy. Second, the intra-agency file forwarded to her as a basis for her decision bears little resemblance to the complete and reliable record created and tested by the adversarial process in a trial or formal agency hearing.

IRS defendants performing functions the *Stankevitz* defendants did may legitimately be covered by the executive-branch analog to prosecutors' quasi-judicial immunity as outlined in *Butz,* 438 U.S. at 515–17, 98 S.Ct. at 2915–16. Their actions triggered the deficiency proceeding with its procedural safeguards, including preseizure, preassessment notice and an opportunity for the taxpayer to take his case to the impartial forum of the Tax Court.

In contrast, Bothke's complaint is that statutorily prescribed safeguards were circumvented in his case in disregard of his vigorous protests at every stage. The IRS sent him no deficiency notice, a jurisdictional prerequisite for a petition to the Tax Court, and provided no impartial, formal agency hearing.

*Stankevitz* ruled that the proper forum for taxpayer complaints of unfair treatment is in a subsequent enforcement proceeding by the agency. 640 F.2d at 206. This rule cannot apply when the agency has bypassed the "proceeding" and gone precipitously to enforcement.

■ Qualified immunity for federal executive officials is the general rule and absolute immunity the exceptional case, a proposition first voiced in *Butz,* 438 U.S. at 506–08, 98 S.Ct. at 2910–12, and recently reiterated in *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982). Were we to accord absolute immunity to defendant Terry under the guise of applying *Butz,* its carefully delineated exception would overwhelm the rule set forth in that case.

That IRS agents performing specific tasks had absolute immunity in *Stankevitz* does not mean that all IRS agents are also absolutely immune irrespective of what tasks they perform. There is no such blanket immunity for an arm of government.

■ The immunity available depends not on an official's job title or agency, but on the function that person was performing when taking the actions that provoked the lawsuit. *See, e.g., Richardson v. Koshiba,* 693 F.2d 911, 913–14 (9th Cir.1982) (even judicial personnel are not absolutely immune when performing executive functions); *Harlow,* 102 S.Ct. at 2735. *See also Scheuer v. Rhodes,* 416 U.S. at 247, 94 S.Ct. at 1692.

As demonstrated, Terry does not qualify for the quasi-judicial absolute immunity delineated in *Butz.* We must inquire if she was entitled to absolute immunity on some other ground.

■ Absolute immunity is accorded only to those public officials "whose special functions or constitutional status requires complete protection from suit." *Harlow,* 102 S.Ct. at 2732. These are members of the legislature and judiciary performing their characteristic functions, and the President of the United States. *See id.* at 2732–33.

For executive officials other than the President, the Supreme Court has extended absolute immunity to those playing an integral part in judge-supervised trials or in closely analogous proceedings. *See id.* at 2733 (citing *Butz,* 438 U.S. at 508–17, 98 S.Ct. at 2911–16); *Briscoe v. LaHue,* —— U.S. at ——, 103 S.Ct. at 1115–21. It has denied absolute immunity to senior aides to the President, *Harlow,* 102 S.Ct. at 2736, Cabinet members, *see id.* at 2734 (citing *Butz,* 438 U.S. at 506, 98 S.Ct. at 2910–11), and state governors, *see Harlow,* 102 S.Ct. at 2733 (citing *Scheuer v. Rhodes,* 416 U.S. at 247–48, 94 S.Ct. at 1692).

■ Because Terry does not fit within the subcategory of executive officials held absolutely immune in *Butz,* a new category of absolutely immune executive officials would have to be created to exempt her unqualifiedly from liability. New categories are recognized only in "exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of public business." *Butz,* 438 U.S. at 507, 98 S.Ct. at 2911.

■ A defendant official bears the burden of proving that "public policy requires an exemption of that scope," *id.* at 506, 98 S.Ct. at 2911, that "the responsibilities of his office embraced a function so sensitive as to require a total shield from liability." *Harlow,* 102 S.Ct. at 2736. A court evaluates this possibility by assessing the importance of public policy considerations through "reference to the common law, or more likely, our constitutional heritage and structure." *Id.* at 2736 n. 20.

Terry has made only a cursory argument that tax collectors are entitled to an absolute immunity independent of the quasi-judicial immunity recognized in *Butz.* She

contends that the duties of an IRS official responsible for seizing property invite personal retaliation in the form of vexatious damage suits and that absolute immunity is essential if these officials are effectively to conduct the important public business of tax collection.

■ Police officers, whose important duty to protect the public may involve deprivations of liberty through arrests, are entitled only to qualified immunity, *Scheuer*, 416 U.S. at 245, 94 S.Ct. at 1691, though their actions would seem equally likely to invite retaliatory suits. Law enforcement personnel executing levies were traditionally not protected by any immunity under the common law. IRS agents are "relatively low-level executive officers" with a correspondingly "narro[w] range of official discretion." *Mark v. Groff*, 521 F.2d at 1380–81. *Cf. G.M. Leasing*, 560 F.2d at 1014 (levying is "ministerial" rather than "discretionary" activity).

Other cases addressing IRS agents' damages liability for levy-related activities have chosen the qualified immunity standard. *Hall v. United States*, 704 F.2d at 249–50 & n. 2; *Hutchinson v. United States*, 677 F.2d at 1328; *G.M. Leasing Corp. v. United States*, 560 F.2d at 1015.

We recognize the government's interest in collecting taxes. Congress's taxing power is granted by the Constitution, U.S. Const. Art. I § 8, cl. 1; Amend. XVI. The importance of tax collection is reflected in statutes which, for example, prohibit its injunction. *See* 26 U.S.C. § 7421(a).

■ But the law reflects also a Congressional determination that the taxpayer should be afforded certain procedural rights, which the IRS is bound to respect. *See, e.g., Laing v. United States*, 423 U.S. 161, 96 S.Ct. 473, 46 L.Ed.2d 416 (1976). In balancing these interests, Congress has determined that violations of the procedural rights at issue here are exceptions to the Anti-Injunction Act. *See* 26 U.S.C. §§ 6213(a), (b)(2), 7421(a).

Private ownership of property and its enjoyment secure from arbitrary governmental interference are cherished, fundamental concepts, *see* U.S. Const. Amends. III, IV, V, X, XIV, and are two of the features distinguishing this society from those with oppressive governments.

Unjustified governmental invasion of property rights by seizure can occasion physical hardship, *see Commissioner v. Shapiro*, 424 U.S. 614, 629–30 & n. 11, 96 S.Ct. 1062, 1071–72 & n. 11, 47 L.Ed.2d 278 (1976), but the affront to the citizen's notions of the place of government in our society, when personally confronting the misuse of its awesome power, may engender a turmoil that is more profound than the physical effects of the deprivation. *Cf. Bivens*, 403 U.S. at 391–92, 394–96, 91 S.Ct. at 2002–03, 2003–05.

■ The Service, with its broad authority including that of levying property, has power that is considerable, and in some ways unique, to disrupt taxpayers' lives. The needs of the public fisc are vital, but their mere invocation cannot override all rights of the public for whom it exists, without reference to the propriety of that invocation.

■ With the IRS's broad power must come a concomitant responsibility to exercise it within the confines of the law. The Court has emphasized that no official is above the law, and that broad powers present broad opportunities for abuse. *Butz*, 438 U.S. at 505–06, 98 S.Ct. at 2910–11. *Cf. Mark v. Groff*, 521 F.2d at 1380 n. 4.

■ We conclude that agents in Terry's position do not meet the Supreme Court's test for creating new categories of absolutely immune executive officials.

## II. *Qualified Immunity*

The decision below reflects a determination that Terry acted with subjective good faith. However, when it was rendered, officials asserting the qualified immunity defense had to demonstrate that they met an objective standard of good faith as well. *See, e.g., Wood v. Strickland*, 420 U.S. 308, 321, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214

(1975). Ignorance or disregard of settled, undisputable law negates this defense even if subjective good faith exists. *Id.*

The Supreme Court has since revised the summary judgment test for qualified immunity, making objective good faith the only requirement. The district court is to place its "[r]eliance on the objective reasonableness of an official's conduct." *Harlow,* 102 S.Ct. at 2739. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages *insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id.* at 2738 (emphasis supplied).

Bothke argues that Terry has not met this standard, because (1) the IRS allegedly did not follow statutory procedures, and (2) he warned Terry twice that she was proceeding illegally. Because of the lower court's disposition on the immunity issue, it did not reach the question whether the IRS proceeded correctly.

■ For a levy to be statutorily authorized in the circumstances here, two conditions must be fulfilled. First, a 10-day notice of intent to levy must have issued. *See* 26 U.S.C. § 6331(a). Terry ascertained that this had been done. Second, the taxpayer must be liable for the tax. *Id.* Tax liability is a condition precedent to the demand. Merely demanding payment, even repeatedly, does not cause liability.

■ For the condition precedent of liability to be met, there must be a lawful assessment, either a voluntary one by the taxpayer or one procedurally proper by the IRS. Because this country's income tax system is based on voluntary self-assessment, rather than distraint, *Flora v. United States,* 362 U.S. 145, 176, 80 S.Ct. 630, 646–47, 4 L.Ed.2d 623 (1960), the Service may assess the tax only in certain circumstances and in conformity with proper procedures.

Bothke believes that the IRS had to follow the deficiency proceedings of 26 U.S.C. §§ 6212, 6213(a), under which he was entitled to a preassessment notice of deficiency which gave him 90 days to petition the Tax Court. Terry argues that the IRS was proceeding properly under an exception to the statutory requirement, whereby no deficiency notice is necessary if the amount assessed is the result of a mathematical or clerical error on the face of the return. *Id.* § 6213(b)(1), (g)(2).

■ Even under this exception, the regular deficiency-proceeding safeguards are mandatorily triggered if the taxpayer requests an abatement within 60 days. *Id.* § 6213(b)(2). Bothke responded to the IRS's Correction to Arithmetic well within that time.

■ The IRS failed to construe his protest as a request for abatement because he did not cite this statute. But the notice to Bothke did not suggest that the IRS expected a statutory reference before it would conclude that the taxpayer's procedural rights under the statute had been triggered. Rather, it indicated that Bothke could challenge the correction merely by "let[ting] us know if you believe that the balance due is incorrect."

■ More importantly, the statute does not require that the taxpayer put a legal classification on his protest. The Service, however, with its expertise, is obliged to know its own governing statutes and to apply them realistically. Bothke's strongly worded protest should reasonably have been construed as a request for abatement. It seems the IRS proceeded illegally even under its interpretation of the proper procedure to use for his tax return.[4]

■ If Terry had this protest or was aware of its substance, it is questionable whether she can meet the objective good

---

4. Terry has in the alternative suggested briefly that the procedure used was proper because no determination of a prior notice of deficiency is required when the assessment is based on the return as filed. The authority offered is *Collins v. United States,* 45 A.F.T.R.2d 616 (E.D.Mo. Dec. 3, 1979). In that case, the taxpayers had self-assessed the taxes but failed to pay them. Under the facts here, this argument is frivolous. As the magistrate noted, when Terry's counsel suggested this below, "if you read [Bothke's Form 1040] literally it indicates that the $1,100 should come back to him. It doesn't indicate that he owes anything."

faith standard.[5] This information is not in the record on appeal.[6]

We remand for a determination whether Terry met the *objective* good faith standard. The matter of Bothke's protest to the Correction to Arithmetic and Terry's knowledge of it will be considered.

Bothke is clearly not without fault in the creation of this situation in view of the manner in which he prepared his 1977 tax return. The Service, however, has efficient methods for dealing with such returns. Our decision will not hamper it from pursuing those proper methods in similar situations. *Cf. Fullerton Market Cold Storage Co. v. Cullerton,* 582 F.2d 1071 at 1078 (7th Cir.1978).

**III.** *Other Issues*

Bothke alleges that the district court denied him a jury trial. The court did not do so explicitly; rather, lack of a jury trial was a consequence of granting summary judgment. The magistrate indicated that Bothke would have received a jury trial had the matter gone to trial. This question is not ripe for review.

Our decision, as was the decision below, is limited to the immunity issue. We express no opinion on other matters that might result in an early resolution.[7]

CONCLUSION

Our previous disposition is withdrawn. The decision below is reversed insofar as it held defendant Terry absolutely immune. The rest of the judgment is vacated and the

---

**5.** This is not to be read to imply that where the file passed to the field officer masks, either carelessly or systematically, facts pertinent to the legality of the levy, immunity will automatically result. If the field officer has *reasonable* notice of possible irregularities that would make a levy illegal, whether the notice comes by examination of the file or otherwise, the matter must be resolved, if the exercise of discretion to levy is to have a factual basis of adequate scope. This is especially true in a routine case where no jeopardy assessment is involved and the circumstances are not exigent. This follows from an application of good faith immunity standards to the fact that field officer job duties include investigating an account before determining that a levy is warranted.

We recognize that several agents may deal with a case before it reaches the field officer and that any procedural error in these earlier stages are committed by officials other than the one ultimately assigned the account for investigation and levy.

Bothke's March 15 protest to the Correction to Arithmetic exemplifies the sort of thing which, if known to the field officer, would provide reasonable notice of preexisting procedural improprieties. It is the item which, after a review of the record in this case, stands out as raising a genuine issue of Terry's good faith under the objective standard. The district court's findings of her subjective good faith survives the clearly erroneous test.

**6.** Terry did have the "Taxpayer Delinquent Account," but we cannot decipher the abbreviations and transaction codes for the items in the printout. The date of one item corresponds approximately with the date the IRS received Bothke's March 15 protest.

Our consideration of this matter was hampered in other ways. The copy of Terry's

handwritten "TDA History Record" in the record on appeal is so poorly reproduced as to be partially illegible. We are unable to decipher the numerical codes Terry used. There appears to be an unexplained hiatus on lines 9 and 13.

**7.** Terry argues in her opposition to the petition for rehearing that Bothke's complaint failed to state a constitutional claim, despite his allegations of constitutional violations. The rule of absolute official immunity still holds for common-law torts.

Summary collection procedures have been upheld against due process arguments where the taxpayer had an opportunity for a post-seizure notice and hearing. *E.g., Phillips v. Commissioner,* 283 U.S. 589, 593–601, 51 S.Ct. 608, 610–13, 75 L.Ed. 1289 (1931); *Bomher v. Reagan,* 522 F.2d 1201, 1202 (9th Cir.1975); *Tavares v. United States,* 491 F.2d 725, 726 (9th Cir. 1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1120, 43 L.Ed.2d 394 (1975); *cf. Fuentes v. Shevin,* 407 U.S. 67, 91–92 & n. 24, 92 S.Ct. 1983, 2000 & n. 24, 32 L.Ed.2d 556 (1972) (summary seizure proper when "*essential* that governmental needs be *immediately* satisfied") (quoting *Phillips,* 283 U.S. at 597, 51 S.Ct. at 611) (emphasis by the *Shevin* Court).

However, in those cases the attack was on the procedures themselves, not on acts which allegedly bypassed statutory procedural safeguards as here.

Moreover, the Supreme Court has said that in some instances due process concerns may be implicated in tax seizures. *Commissioner v. Shapiro,* 424 U.S. 614, 629–32 & nn. 11–12, 96 S.Ct. 1062, 1071–73 & nn. 11–12, 47 L.Ed.2d 278 (1976).

The Fifth Circuit has held that in circumstances similar to those here, a cause of action could be implied under the due process clause

case is remanded for a determination whether the defendant met the objective good faith standard and for further proceedings as may be necessary.

of the Fifth Amendment. *Seibert v. Baptist,* 599 F.2d 743 (5th Cir.1979), *reversing on rehearing* 594 F.2d 423 (5th Cir.'1979), *cert. denied,* 446 U.S. 918, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980). The Sixth Circuit appears to have done so. *Hall v. United States,* 704 F.2d at 249 n. 1.

Moreover, several courts have suggested that though federal officials are absolutely immune from liability for state and common-law torts, they should not be absolutely immune if the plaintiff relies on a cause of action under federal law short of a constitutional claim. *See, e.g., Lawrence v. Acree,* 665 F.2d 1319, 1326 & n. 11 (D.C.Cir.1981). *See also Harlow,* 102 S.Ct. at 2738 (good faith immunity in *Bivens* suits applies insofar as conduct does not violate "clearly established *statutory or constitutional rights* of which a reasonable person would have known") (emphasis supplied). Bothke alleges violations of federal statutes that accorded him specific rights.

Another issue, raised but not reached below and not argued on appeal, is whether a *Bivens* action should be barred because Bothke may have had an alternative remedy. *Compare Bivens,* 403 U.S. at 396–97, 91 S.Ct. at 2004–05, *to Bush v. Lucas,* —— U.S. ——, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) *and Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

Terry suggested below that Bothke might have been able to get an injunction under an exception to the prohibition on enjoining tax collection, *see* 26 U.S.C. §§ 6213(a), 6213(b)(2), 7421(a), because the IRS allegedly failed to give him the statutorily required notices. However, cases seem to have limited the preclusion question to whether the plaintiff had available certain alternative retrospective remedies, not whether the plaintiff might have prevented the violation with an injunction sought on the assumption that government officials would act illegally in the future.