**SECURITY INDUSTRIAL INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**UNITED STATES of America, et al., Defendants-Appellees.**

No. 86–3806.

United States Court of Appeals, Fifth Circuit.

Oct. 23, 1987.

F. Kelleher Riess, Metairie, La., for plaintiff-appellant.

John J. Boyle, Atty., Michael L. Paup, Chief, Appellate Section, Tax Div., Justice Dept., Roger M. Olsen, Asst. Atty. Gen., Robert S. Pomerance, Atty., Washington, D.C., for defendants-appellees.

Before WISDOM, GEE, and RANDALL, Circuit Judges.

GEE, Circuit Judge:

Security Industrial Insurance Co. ("the taxpayer") appeals the dismissal of this *Enochs* suit[1] seeking to enjoin collection of federal income tax. We remand for dismissal.

## I.

The taxpayer and the government entered into several agreements extending the three-year statute of limitations for the 1973 tax year. Under the last of these agreements, the limitation would run in December 1982. The government issued a statutory notice of deficiency to the taxpayer 46 days before the end of the extended period. The taxpayer filed a timely petition in the United States Tax Court for a redetermination, and the parties entered into a stipulated decision in October 1985. The parties agree that this stipulated decision was unappealable. The government assessed the redetermined deficiency 140 days after the entry of the Tax Court decision; the government notified the taxpayer of the new assessment 109 days after it was entered.

The taxpayer sued on two theories to enjoin collection of the tax. One of these was that the new assessment had to be entered within the 46 days remaining in the original period of limitation tacked on to 60 days after the decision of the tax court was "final," or a total of 106 days after the decision was "final." *See* I.R.C. § 503(a)(1).[2] The taxpayer asserted that

---

1. *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962).

2. Section 6503(a)—"Issuance of statutory notice of deficiency"—reads in relevant part (emphasis added):

(1) General Rule.—The running of the period of limitations provided in section 6501 or 6502 ... on the making of assessments ... in respect of any deficiency ... shall (after the mailing of notice under section 6211(a)) be suspended for the period during which the

under normal rules of law the Tax Court decision was "final" on the day it was entered, because as a stipulated decision it could not be challenged by appeal or otherwise. Thus, according to the taxpayer, the assessment 140 days later was untimely and invalid. Two, the taxpayer contended that under I.R.C. § 6303(a)[3] it was entitled to notice of the new assessment within 60 days, and that the late (109) day notice invalidated the assessment. The government responded by invoking the protections of the Anti-Injunction Act, I.R.C. § 7421(a).[4] On the merits, the government argued that the tax court decision did not become "final" for purposes of the limitations clock until 90 days after it was entered, thus giving it 196 days after the date of the decision to enter the new assessment. In addition, the government gave various reasons why its failure to comply with the 60–day rule of § 6303(a) did not invalidate the assessment.

The district court ruled for the government. The court noted that to come within the judicially-created "narrow exception" to the Anti-Injunction Act in *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), the taxpayer had to show that "it is clear that under no circumstances could the Government prevail," and that the taxpayer "would suffer irreparable injury if collection were effected." 370 U.S. at 7, 82 S.Ct. at 1129. On the first question presented, the court accepted the government's position that *all* Tax Court decisions become "final" 90 days after entry, regardless of whether they are appealable or not. On the second, the court ruled that it was

well-recognized that failure by the government to meet the time-limit for statutory notice specified in § 6303(a) did not invalidate the assessment if the taxpayer had actual notice independent of the statutory notice, citing *United States v. Friedman*, 739 F.2d 252 (7th Cir.1984) (receipt of notice *before* assessment does not invalidate assessment). The court dismissed the suit, but apparently without prejudice to litigating the same issues in the Tax Court, since it simply ruled that the plaintiff had failed to satisfy the first prong of *Enochs*. The taxpayer appeals.

## II.

The first question is when a stipulated Tax Court decision become "final" for purposes of § 6503(a). The government urges us not to reach the merits of this question. In the government's view, the very fact that the question is novel and somewhat difficult is enough to end this *Enochs* action: if the question is novel or difficult, it necessarily follows that the taxpayer has failed to demonstrate that "it is clear that under no circumstances could the Government prevail." The government's argument has force, and we would accept it in many situations. This question, however, is a narrow one, a legal one, and a binary one at that: the parties agree that there are only two possible answers to the question of when a stipulated Tax Court judgment is final. If we resolve the question on the merits, it will not spawn a series of *Enochs* cases presenting variations on the theme, thus sapping the vitality of the

Secretary is prohibited from making the assessment or from collecting by levy or proceeding in court (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Tax Court, *until the decision of the Tax Court becomes final*), and for 60 days thereafter.

3. Section 6303(a) reads:

   (a) General rule.—Where it is not otherwise provided by this title, the Secretary or his delegate shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid

tax, state the amount and demanding payment thereof. Such notice shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address.

4. Section 7421(a) reads:

   (a) Tax.—Except as provided in sections 6212(a) and (c), 6213(a), 6672(b), 6694(c), 7426(a) and (b)(1), and 7429(b), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax is assessed.

Anti-Injunction Act[5] and the underlying Congressional tax policy of "pay first, litigate later." So far as we can see, no further variations are possible. Therefore, because of the unique characteristics of the question, we will proceed to the merits in order to determine if the case comes within the "under no circumstances could the Government prevail" prong of *Enochs*.

If the answer to the first question lies in the Internal Revenue Code, it appears at § 7481, which reads:

§ 7481. Date when Tax Court decision becomes final

(a) Reviewable decisions.—Except as provided in subsection (b), the decision of the Tax Court shall become final—

(1) Timely notice of appeal not filed.—Upon the expiration of the time allowed for filing a notice of appeal [90 days; see § 7483], if no such notice has been duly filed within such time; or

(2) Decision affirmed or appeal dismissed.—[details about finality of appealed cases.]

\* \* \* \* \* \*

(b) Nonreviewable decisions.—The decision of the Tax Court in a proceeding conducted under section 7463 [cases involving less than $10,000] shall become final upon the expiration of 90 days after the decision is entered.

Small cases under § 7463, described in § 7481 as "nonreviewable decisions," cannot be directly reviewed or appealed. *See* § 7463(b) (decisions under § 7463 "shall not be reviewed in any other court").[6]

The taxpayer's argument is this: (1) A stipulated decision cannot be appealed, *see, e.g., White v. Commissioner of Internal Revenue*, 776 F.2d 976, 977 (11th Cir.1985) (citing cases); (2) therefore, it is not a "reviewable decision" within the meaning of § 7481; (3) therefore, the date that a stipulated case becomes final is not provided for in § 7481, and the normal rules in federal litigation apply, *see* I.R.C. § 7482; and (4) the normal rule as to finality is that the decision is final upon entry of the stipulated judgment, *see, e.g., Stanford v. Utley*, 341 F.2d 265 (8th Cir.1965) (since no appeal could be taken from consent judgment, the judgment was final and the time for appeal expired upon entry). The taxpayer also finds support for its position in the two opinions in *United States v. Shepard's Estate*, 196 F.Supp. 281 (N.D.N.Y. 1961), *aff'd*, 319 F.2d 699 (2d Cir.1963). We do not find the opinions in *Shepard's Estate* to be particularly useful, since they were concerned with an entirely different issue; however, because they provide indirect support for the taxpayer's position we summarize them in the margin.[7]

---

5. *See supra* note 4.

6. Small cases can be "discontinued," however, and returned to the regular Tax Court docket at any time before the decision becomes final, *i.e.,* up to 90 days after the decision, if the taxpayer or Secretary requests the "discontinuance" and the Tax Court determines in its discretion that regular treatment of the case is appropriate because the amounts involved turned out to be significantly greater than $10,000. § 7463(d).

7. The taxpayer in *Shepard's Estate* had filed during the pendency of a case in the Tax Court a waiver consenting to immediate assessment and collection of the deficiency. The government responded by asserting that the waiver would not dispose of the matter which was already within the jurisdiction of the Tax Court. After further negotiations, the parties agreed to a stipulated decision several months later. When the government entered an assessment based on the stipulated Tax Court decision, the taxpayer protested, arguing that its entry of a waiver during the pendency of the Tax Court

case began the running of the statute of limitations anew, and that the new assessment was too late. The district court disagreed:

The decision of the Tax Court was made on August 28, 1952. The taxpayer, having stipulated for the entry of such decision, cannot appeal therefrom. It therefore became final as of that date and the statute of limitations was suspended until sixty days thereafter or until October 27, 1952. It follows that the assessment made on October 24, 1952 was therefore timely and valid.

*Shepard's Estate*, 196 F.Supp. at 285. The Court of Appeals agreed that "the filing of the taxpayer's petition in the Tax Court ... tolled the running of the limitations period ... until sixty days after the decision of the Tax Court on August 28, 1952." 319 F.2d at 700.

The opinions in *Shepard's Estate* state the precise proposition that the taxpayer asserts in this case, but obviously they were concerned with an entirely different kind of argument than the one at issue here. The point of the decisions in *Shepard's Estate* was to reject the taxpayer's

The taxpayer's argument contains a logical hiatus. The jump is from the first to the second premise: The fact that a decision is unreviewable by appeal does not necessarily mean that it is not a "reviewable decision" within the meaning of subsection (a) of § 7481.

We must begin with the language and structure of the statute itself. First, its broad title—"Date when Tax Court decision becomes final"—is of critical importance because it implies that this particular section is intended to answer all questions about the date of finality, that it contains and categorizes the entire universe of possible times for the finality of Tax Court decisions. The statute then divides up the "date the decision becomes final" universe into only two categories: "(a) Reviewable decisions," and "(b) Nonreviewable decisions." Category (a) is not further defined, and the taxpayer's argument derives its rhetorical power from the subtitle itself: "reviewable decisions" seems to name a category that must exclude decisions that were stipulated, thus *unreviewable* by appeal. However, because § 7481 divides the universe of finality into only two categories, we can understand category (a) only by contrasting it with category (b), which *is* carefully defined. Category (b)—"nonreviewable decisions"—is limited to a particular class of small cases (under $10,000) transferred "at the option of the taxpayer" from the Tax Court to a special docket under § 7463. Therefore, if § 7481 describes the entire universe of cases, by negative inference category (a) must include all other Tax Court cases, regardless of their disposition.

It is clear from the statute that the category labels in § 7481—"reviewable decisions" and "unreviewable decisions"—are not functional descriptions of each and every case within the category. Rather, the labels are short-hand for a structural and institutional distinction, namely, the two distinct dockets in the Tax Court. The regular "large case" Tax Court docket is made up of cases that (as a general rule) are "reviewable" in the Courts of Appeals. The "small case" docket is made up of cases that are "unreviewable" in the Courts of Appeals. The fact that a *particular* case on the "large case" docket is unreviewable by appeal for some idiosyncratic reason does not take it out of the structural and institutional category of "reviewable decisions" under § 7481(a). Such a case is still the *kind* of decision (a large case) that is reviewable in the Courts of Appeals.

■ For more assurance, consider the statute from the opposite perspective. The taxpayer contends that its stipulated decision was unappealable, thus not "reviewable" within the meaning of § 7481(a), thus not subject to § 7481(a)'s 90-day delay in finality. Yet the taxpayer argues forcefully—and we completely agree—that the fact that the decision was not reviewable does not make it into a "nonreviewable decision" within the meaning of § 7481(b). The taxpayer in essence argues that it would be a mistake to give the "nonreviewable" label of § 7481(b) a functional or descriptive interpretation, and to classify the stipulated judgment under it accordingly. Rather, we should perceive that the "unreviewable" label of § 7481(b) is simply a surrogate for the underlying institutional distinction between the two dockets of the Tax Court. We agree with this view; but, unlike the taxpayer, we are willing to apply it consistently. Just as the unreviewable status of the stipulated decision does not put it in the class of "nonreviewable decisions" under § 7481(b), the unreviewable status of the stipulated decision does not remove it from the class of "reviewable decisions" under § 7481(a).

Our logical parsing of the statute is well and good, but there are also compelling practical reasons to reject the taxpayer's argument. The taxpayer cites us to *White v. Commissioner of Internal Revenue*, 776 F.2d 976 (11th Cir.1985), where the Eleventh Circuit dismissed an appeal from a

crafty argument by holding that the statute began to run from the date of the stipulated deci-

sion *at the earliest.*

stipulated Tax Court judgment. *White* perfectly illustrates the difference between *legal* finality and *factual* finality: No matter what the *legal* effect of a stipulated judgment, the *fact* is that taxpayers can appeal. The taxpayer files a notice of appeal, the parties submit briefs to the reviewing court, and under current caseloads many months may pass before the Court of Appeals finally rules that no "appeal"—in the *legal* sense—is possible. Meanwhile, an *actual* appeal has just occurred.[8] In consequence, the government must wait out the 90 day post-judgment appeal period even when the taxpayer has stipulated to a judgment, because taxpayers can and do *in fact* appeal.[9]

We conclude that even an unappealable and thus legally unreviewable Tax Court decision is a "reviewable decision" within the meaning of § 7481(a). "Reviewable decisions" under § 7481(a) are final 90 days after the decision is entered. § 7483. Therefore, the assessment was timely.

### III.

The taxpayer asserts that the government's failure to abide by the statutory deadline for notice in § 6303(a) [10] "bars the Commissioner from collecting the tax." The government responds with powerful arguments that the notice requirement is designed to protect taxpayers from surprise and embarrassment at the government's use of summary administrative procedures such as levies and liens. Therefore, says the government, failure to give notice at most deprives the government of the right to proceed with administrative remedies; it does *not* magically dissolve the legitimate and undisputed tax debt owed by the taxpayer to the government. The taxpayer does not respond to this argument in its reply brief.

8. The time at which such "appeals" are final is set out in § 7481(a)(2), subtitled "Decision affirmed or appeal dismissed"—another indication of the comprehensive nature of the statute.

9. Moreover, it is not even clear that an appeal from a stipulated judgment is necessarily without merit. If the Tax Court was without juris-

■ The government is right enough. Recall that we are operating under the strictures of the "under no circumstances could the Government prevail" prong of *Enochs.* Therefore, all the government has to show is that the tax assessment is not invalidated for all purposes by the defective notice. With a slight assist from the referee, the government makes this showing.

The government's brief includes citations to a series of relevant cases:

Where the IRS timely assesses a tax but fails to provide the taxpayer with the notice and demand specified in Section § 6303(a), the courts have held that this procedural error neither extinguishes the taxpayer's liability nor bars the government from proceeding to collect the tax by a timely-filed civil suit. See *United States v. Erie Forge Co.,* 191 F.2d 627, 631 (3d Cir.1951) [ (defective statutory notice might effect validity of administrative remedies, but it is "immaterial in an action by the United States, since such a suit is brought 'either upon the assessment, or upon the duty imposed by the statute alone,' " quoting *Jenkins v. Smith* ) ], *cert. denied,* 343 U.S. 930, 72 S.Ct. 759, 96 L.Ed. 1339 (1952); *Jenkins v. Smith,* 99 F.2d 827, 828 (2d Cir.1938) [ (same) ]; *Sherwood v. United States,* 246 F.Supp. 502 (E.D.N.Y.1965) [ (same in dicta) ]; see also *Brafman v. United States,* 384 F.2d 863, 865 n. 4 (5th Cir. 1967) ( [dicta:] "The sending of notice [of an assessment] is not necessary to the validity of an assessment" [citing *Filippini v. United States,* 200 F.Supp. 286 (N.D.Cal.1961), *aff'd on other grounds,* 318 F.2d 841 (9th Cir.), *cert. denied,* 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 165 (1963) ] )....

Appellee's Brief at 36 (all but the next to last bracketed material added). Most if not all these cases, however, deal with tax

diction, for example—and of course the parties could not confer jurisdiction by their agreement —a disgruntled taxpayer might well be able to appeal successfully from a stipulated judgment.

10. *See supra* note 3.

years to which the Internal Revenue Code of 1939 applied. The predecessor statute to § 6303(a) explicitly applied only to the collection efforts of the tax collector. *See* I.R.C. § 3655 (1952). The government fails to cite cases under the 1954 Code in support of its argument.

But we can help: the holding of the Third Circuit in *United States v. Jersey Shore State Bank*, 781 F.2d 974 (3rd Cir. 1986), *aff'd*, —— U.S. ——, 107 S.Ct. 782, 93 L.Ed.2d 800 (1987), is on point. The question presented in that case was whether the failure of the government to notify a third-party lender/wage-payer of an assessment against the taxpayer for which the lender might be personally liable under § 3505 barred collection of the tax in a suit brought by the government. The court disagreed with the Seventh Circuit in *United States v. Associates Commercial Corp.*, 721 F.2d 1094, 1100 (7th Cir.1983), which had ruled that the *Erie Forge* and *Jenkins* line of cases went out with the 1939 Code, and held:

> Thus, absent any legislative history to the contrary, we find that section 6303(a), like its predecessor statute under the 1939 Code, *only requires notice to those individuals against whom the government can proceed administratively.* As a result, the government's failure to provide [defendant] Jersey

Shore [Bank] with a copy of the notice of assessment and demand for payment sent to Pennmount [the taxpayer] does not bar its suit to collect the Bank's liability under § 3505.

*Jersey Shore State Bank*, 781 F.2d at 981 (emphasis added).[11] The Supreme Court affirmed bluntly—"Reading the two sections together, we agree with the Court of Appeals that § 6303(a) is most logically read not to apply where the government seeks to collect from a lender under § 3505."—but did not specifically address the Third Circuit's rationale that the government's failure to notify under § 6303(a) cuts off only the government's administrative and not judicial remedies. *Jersey Shore State Bank v. United States*, —— U.S. ——, ——, 107 S.Ct. 782, 785, 93 L.Ed.2d 800 (1987). Still, language in the Supreme Court decision certainly reinforces the view that the lack of notice under § 6303(a) deprives the government of administrative remedies only.[12]

We think it inappropriate to reach the merits of this issue. Whichever is correct, the Third or the Seventh Circuit, the question of the effect of the defective notice on the government's underlying right to collect is sufficiently doubtful—and the potential legal and factual variations so limitless —that the taxpayer has not shown that "under no circumstances could the Govern-

---

**11.** While ruling in the § 3505 context, the Ninth Circuit has agreed with the Third Circuit's broader conclusion that violations of § 6303(a) only foreclose the government's administrative remedies, but do not limit civil suits on the underlying tax debt. *See United States v. Hunter Engineers & Constructors, Inc.*, 789 F.2d 1436, 1439–40 (9th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987). Both the Eighth and Eleventh Circuits sided with the Third on the § 3505 question, but did not rule on the general question of whether failure to notify under § 6303(a) deprives the government of judicial as well as administrative remedies. *See United States v. Messina Builders and Contractors*, 801 F.2d 1029, 1032–33 (8th Cir.1986), *vacated*, —— U.S. ——, 107 S.Ct. 1560, 94 L.Ed. 2d 754 (1987); *United States v. Merchants National Bank of Mobile*, 772 F.2d 1522, 1523–24 & n. 1 (11th Cir.1985), *vacated*, —— U.S. ——, 107 S.Ct. 944, 93 L.Ed.2d 993 (1987).

**12.** The passage which comes closest to dealing with the issue directly reads:

> Jersey Shore first maintains that, because employers and lenders are similarly situated under the Code, the procedural requirements applicable to employers must be accorded to lenders. But even assuming that § 6303(a) notice would provide lenders with meaningful information, we are unpersuaded by this contention. Under the collection mechanisms established by the Code, employers and lenders are in very different positions. While employers are subject to the Government's summary collection procedures soon after unpaid employment taxes are assessed, *see, e.g.,* §§ 6321, 6322, 6331, 6335, the legislative history of § 3505 makes clear that the Government may forcibly collect against a lender only by filing a civil suit.... An employer therefore has a far greater need for an assessment notice than third-party lenders, who are not subject to summary collection procedures.
> —— U.S. at ——, 107 S.Ct. at 785.

ment prevail" as required by Enochs. As to this issue, the taxpayer must pay first and litigate later.

### IV.

We hold that the stipulated decision was a "reviewable decision" within the meaning of § 7481(a), that it became final 90 days after entry, and that the disputed assessment was timely. We also hold that the taxpayer has not established that "under no circumstances could the Government prevail" on the issue of the effect of the untimely notice. We REMAND the case to the district court, so that the court may DISMISS with prejudice the taxpayers claim that the assessment was untimely and DISMISS without prejudice its claim that the defective notice forecloses collection of the tax.