**UNITED STATES of America, Plaintiff,**

v.

**TOYOTA OF VISALIA, Defendant.**

**No. CV–F–90–171 REC.**

United States District Court,
E.D. California.

June 13, 1991.

Michael R. Pinatelli, Jr., Law Office of Michael R. Pinatelli, Jr., San Francisco, Cal.

Michael Lawrence Farley, Farley and De-Santos, Hanford, Cal.

## DECISION AND ORDERS RE CROSS MOTIONS FOR SUMMARY JUDGMENT

COYLE, Chief Judge.

On April 8, 1991 the court heard the parties' respective Motions for Summary Judgment. Upon due consideration of the written and oral arguments of the parties and the record herein, the court grants summary judgment for the United States and denies summary judgment for Toyota of Visalia, Inc. (hereinafter referred to as Toyota) for the reasons set forth herein.

On March 23, 1990, the United States filed a Complaint to Reduce Assessment to Judgment wherein the United States seeks to reduce to judgment an assessment of $96,084.02 as accrued interest. Toyota filed an answer and counterclaim setting up a number of affirmative defenses, including the bar of the statute of limitations on the ground that the two Form 900 Tax Collection Waivers were executed under duress and therefore void.

Both parties have moved for summary judgment in their favor with respect to a number of issues.[1]

### A. *Background.*

Following an audit of Toyota's income tax liabilities for the tax years ending June 30, 1979 and December 31, 1979, the IRS and Toyota entered into a Closing Agreement, which agreement provided that Toyota owed additional tax for both tax years. On March 5, 1984, pursuant to the Closing

---

1. As one of these issues, the United States moves for summary judgment with respect to Toyota's affirmative defense of estoppel. No response to this portion of the motion being made, the court assumes and so rules that Toyota concedes summary judgment for the United States on this issue.

Agreement, the IRS assessed Toyota for its corporate tax liability for the tax year ending 6/30/79 in the amount of $240,-144.00.[2] The Certificate of Assessments and Payments also shows that on March 5, 1984, the IRS made a "restricted interest assessment" of $150,754.28 and assessed a negligence penalty of $15,212.00. Toyota could not immediately pay the 6/30/79 assessment. Toyota and the IRS entered into an installment agreement providing for periodic payments. As of July, 1987, Toyota's account reflected an outstanding balance of $53,950.25.

On July 27, 1987, the IRS delivered to Toyota a Final Notice and Demand in the amount of $54,230.30 for its 6/30/79 tax liability. This amount breaks down as $53,-950.25 as the balance of prior assessments and $280.05 in interest. The Final Demand and Notice provides in pertinent part: "We have calculated penalty and interest amounts to ten days from the date of this notice. If payment is not received by then, additional interest and penalties will be charged." On July 19, 1988, the IRS released the tax lien and notified Toyota by letter dated August 18, 1988 that its income tax liability for the year 1979 had been fully satisfied. However, according to a manual review audit, it was discovered that no statutory interest had been posted to Toyota's 6/30/79 account since the initial assessments were made on March 5, 1984. Therefore, on December 11, 1989, a "restricted interest assessment" in the amount of $94,062.13 was posted to Toyota's Certificate of Assessments and Payments for the tax year ending 6/30/79.

According to the Declaration of Kevin M. Green, C.P.A., a certified public accountant who represents Toyota, on February 14, 1990, Revenue Officer Dennis Stiffler telephoned Green and informed him that Stiffler had just received an assessment for Toyota for the tax year ending 6/30/79 for approximately $96,000.00 in interest. Green further avers in pertinent part:

(b) Mr. Stiffler also informed me that the Statute of Limitations was due to expire in two weeks and that he would need a Tax Collection Waiver signed by Mr. Thomas.

(c) Mr. Stiffler further stated that, if the Tax Collection Waiver was not signed, he would need to start collection action soon.

On February 23, 1990, the IRS issued a Final Notice (Notice of Intention to Levy) seeking payment of accumulated interest and penalty in the amount of $93,391.25.[3] The Final Notice states in pertinent part:

Although we have sent notices to you to pay your Federal tax liability shown below, we have no record of receiving the amount due. This letter is your notice that we intend to levy upon your property or rights to property in accordance with section 6331(d) of the Internal Revenue Code.

To prevent such action, send us your check or money order for the total amount due within 30 days from the date of this letter....

   .   .   .   .   .

If you do not comply with this notice, we may take enforcement action without any further notice to you. We may file a notice of Federal tax lien which is public notice to your creditors that a tax lien exists against your property. We may serve a notice of levy on your employer for salary or wages you are due, and may levy on any bank accounts, receivables, commissions, or other kinds of income you have. We may also seize your property or rights to property, such as automobiles, and sell it to satisfy your tax liability.

On February 23, 1990, Mr. Stiffler sent to Toyota a Tax Collection Waiver and a letter. By letter dated February 26, 1990, Michael R. Pinatelli, Jr., counsel for Toyota, responded to Mr. Stiffler's letter by stating that he had advised his client not to execute the Tax Collection Waiver unless it is served with a Notice of Jeopardy Levy and demand for immediate payment pursuant to 26 U.S.C. § 6331(a). However, Mr.

**2.** Toyota also was assessed additional taxes for the 12/31/79 period.

**3.** No explanation for the difference in amount is given.

484

Pinatelli then opines that it would be unlawful for the I.R.S. to issue such a Jeopardy Levy. Pinatelli concludes:

... I have instructed my client not to execute the Tax Collection Waiver until provided with a Jeopardy Levy. At that time, the Tax Collection Waiver will be executed under duress and immediate action will be undertaken in District Court to enjoin the Internal Revenue Service from taking any further action and for the damages caused to my client.

On February 28, 1990, Stiffler sent a letter to Toyota stating in pertinent part as follows:

It has been determined that the ... 'Final Notice' was not necessary. The present liability is the accumulation of interest resulting from the tax assessed for Form 1120 for the period ending June 30, 1979. The tax was assessed on March 5, 1984 and the 'Final Notice' issued for this liability was dated July 27, 1989 [sic]. This notice sufficiently meets the notice requirements of Internal Revenue Code Section 6303.

.      .      .      .      .

Failure to pay this amount as required will result in the levy upon property and rights to property in accordance with Section 6331(d) of the Internal Revenue Code. In addition, the release of previously filed Federal Tax Liens will be revolked [sic] and recorded again.

By letter dated February 28, 1990, Pinatelli wrote to Stiffler responding that "[i]t is inconceivable that the Final Demand would remain in effect after the amount demanded has been paid." On March 1, 1990, Pinatelli further responded to Stiffler's letter to Toyota dated February 28, 1990:

[Y]our assertion that the IRS has met the notice requirements of IRC § 6303 is patently false. The $90,000–or–so sum ... alleged due is derived from an assessment which was made on December 11, 1989—two-and-one-half years after the 'Final Notice' of July 27, 1987. IRC §§ 6303 and 6331 mandate that 'notice and demand' shall be made only *after* assessment. The requirements and procedures for assessments are set forth in

IRC §§ 6203–6203 and the Regulations thereunder.

Your letter of February 28, 1990 also threatens to rerecord 'previously filed' tax liens. Those liens were in amounts significantly in excess of the amount in dispute here. Filing of such inflated liens would be a clear violation of IRC § 6321.

In my previous communications, I have requested authority from you to support your position. I still have not received such from you. I realize that you may be frustrated over the running of the Statute of Limitations for collection; however, that does not give you the right to violate the laws and procedures which govern the collection of taxes. The threats that you are making to Toyota of Visalia are not supported by the law. That is, they are *unlawful.* Moreover, *you know or should know* such threats are unlawful. Neither you nor your superiors have made reference to any authority which supports your position. You are not following statutorily-mandated provisions for the lawful collection of taxes. Such action may constitute a felony under IRC § 7214 and certainly exposes the Government to civil liability under IRC § 7433.

On March 2, 1990, the IRS served a Notice of Levy on Toyota's business bank account at the Bank of America and on Toyota Motor Credit. It also filed a Notice of Federal Tax Lien with the California Secretary of State and a Revocation of Certificate of Release of Federal Tax Lien with the County Recorder of Tulare County. Also on March 2, 1990, the IRS informed Toyota that it would begin further enforced collection action prior to the expiration of the statute of limitations unless Toyota executed a Tax Collection Waiver. Toyota executed a Tax Collection Waiver extending the statute of limitations from March 4, 1990 to March 16, 1990. Accompanying this Tax Collection Waiver was a letter from Pinatelli to Stiffler stating as follows:

... My client has executed this Tax Collection Waiver under duress as a means

by which to have removed the unlawful levies and liens which were served on various third parties on March 2, 1990. It has been agreed that, by executing the Tax Collection Waiver, my client does not waive its right to obtain a court ruling that the Tax Collection Waiver is invalid for being executed under duress, and to proceed for damages incurred for the unlawful levies or for injunctive relief as to further collection action regarding this matter.

It is my understanding that all liens and levies will be released by today, March 2, 1990.

The levies that had been placed upon Toyota's business bank account at the Bank of America and at Toyota Motor Credit were released on March 2, 1990. On March 13, 1990, the IRS informed Toyota that unless Toyota executed a second Tax Collection Waiver, the IRS would again take enforced collection action. Toyota executed the second Tax Collection Waiver extending the Statute of Limitations to March 23, 1990. According to Pinatelli's declaration:

15. Following the execution of the Tax Collection Waiver, I informed Officer Stiffler that I would be going into United States District Court for Injunctive Relief regarding the IRS's actions in this matter. Prior to filing the anticipated Application for Injunctive Relief, I wrote letters dated March 20, 1990 and March 21, 1990 informing the Chief of Collections and District Director that I would be making application for such. . . .

16. On March 22, 1990, I was contacted by IRS Counsel, Philip Knap. On March 22, 1990, I wrote to Mr. Knap outlining a course of action which would avoid my seeking a Temporary Restraining Order from the U.S. District Court on March 23, 1990 . . . .

17. Subsequent to my meetings with Mr. Knap, he proposed that, rather than my filing for Injunctive Relief, the Justice Department file an action to reduce the assessment to judgment. I agreed to such.

Mr. Thomas, who is an experienced businessman accustomed to signing legal documents, consulted with Pinatelli concerning the nature of the Tax Collection Waivers and understands that, if the Tax Collection Waivers are valid, they extend the time period during which the IRS can collect the assessment. Toyota's contention that the Tax Collection Waivers are invalid by reason of duress is based entirely on its claim that the Commissioner unlawfully levied upon Toyota's bank accounts and its account with Toyota Motor Credit, unlawfully filed Notices of Tax Liens, and asserted that further enforced collection action would take place prior to the running of the statute of limitations if the waivers were not executed.

B. *Outstanding Liability.*

■ The United States submits a Certificate of Assessments and Payments (Form 4340). This Certificate states that a "Restricted interest assessment" in the amount of $94,062.33 was made on December 11, 1989. The Certificate shows an outstanding balance of $87,600.09 plus additional interest from December 11, 1989.

Citing Revenue Procedure 84–58, 1984 CB 501, Toyota argues that it owes no such amount. In so contending, Toyota refers to the fact that on July 27, 1987, the I.R.S. issued to Toyota a Final Notice and Demand in the amount of $54,230.00 for Toyota's 6/30/79 tax liability. Subsequently, Toyota made payments to the I.R.S. totaling $507,349.65. These payments were credited by the I.R.S. to Toyota's 12/31/79 tax liability. Rev.Proc. 84–58 provides in pertinent part:

SEC. 6. ALLOCATION OF REMITTANCES

.01 The Service will allocate any remittance treated as a payment of tax to penalty or interest as designated by the taxpayer if the remittance exceeds the full amount of the underlying tax due. If no designation is made, the remittance will be applied first to tax, then to penalty, and then to interest. If more than one period of tax is involved, the Service will allocate an undesignated remittance so as to satisfy all tax, penalty, and interest for the earliest period before applying any excess to other periods.

**486**

Toyota contends that if the I.R.S. had implemented this Revenue Procedure with respect to payments made after the July 27, 1987 Final Notice and Demand for Toyota's 6/30/79 tax liability, Toyota would not have any remaining liability for the tax year 6/30/79.

However, as the United States points out, Rev.Proc. 84–58 has nothing to do with the application of payments following assessment. Section 1 of Rev.Proc. 84–58 states:

> The purpose of this revenue procedure is to update Rev.Proc. 82–51, 1982–2 C.B. 839, which provides procedures for taxpayers to make remittances in order to stop the running of interest on deficiencies.

Moreover, the court disregards Toyota's contention because Rev.Proc. 84–58 does not have the force and effect of law and thus is not binding on the I.R.S.

■ In *Cleveland Trust Company v. United States*, 421 F.2d 475, 481–482 (6th Cir.), *cert. denied*, 400 U.S. 819, 91 S.Ct. 35, 27 L.Ed.2d 46 (1970), the Sixth Circuit rejected an argument that an estate was entitled to recover a deficiency because the I.R.S. had violated its own Revenue Procedures by failing to identify the "clearly defined error" for which it rejected an informal conference agreement:

> In examining the estate's argument, we note first that there is no requirement in the Treasury Regulations establishing the informal conference procedures that the IRS must identify or explain the error upon which it rejects an informal conference agreement. The Regulations, after providing for review of the informal conference agreements by regional commissioners, states:
>
> > 'In certain circumstances, such as where substantial errors are found or where there is evidence of fraud or collusion, the regional commissioner has the authority to reopen the case.' Treas.Reg. 601.105(1).
>
> Thus, the estate's argument must stand or fall on the Revenue Procedure which provides:

> > 'Occasionally, in cases where an agreement is reached at an informal conference, review of the case will disclose that the conferee's decision was *based on a clearly defined error* having a substantial effect on the tax liability. In such instances, if the change necessary to correct the error is adverse to the taxpayer, he will be offered another informal conference in the matter with the Conference Coordinator.' Rev.Proc. 60–24(5)(.04), 1960 Cum.Bull. 60–24. ....
>
> Without reaching the question of whether the responses by the IRS to the estate's requests for identification of the 'clearly defined error' were in fact sufficient, we must hold that the IRS was not required by the Revenue Procedures to identify the error for which the informal conference agreement was rejected. It is clear that the above quoted Revenue Procedure is directory, not mandatory, and the IRS's alleged failure to sufficiently identify the error can not affect its right to assert a deficiency against the estate ... Whatever deficiencies there may have been in the identification of the 'clearly defined error' for which the agreement was rejected, the IRS was not foreclosed from rejecting the agreement by its own Revenue Procedures.

*Compare Eli Lilly & Co. v. C.I.R.*, 856 F.2d 855, 865–866 (7th Cir.1988). In *Ward v. C.I.R.*, 784 F.2d 1424, 1430–1431 (9th Cir.1986), the Ninth Circuit, citing *Rank v. Nimmo*, 677 F.2d 692 (9th Cir.), *cert. denied*, 459 U.S. 907, 103 S.Ct. 210, 74 L.Ed.2d 168 (1982), explains that there is a two part test for determining whether a published rule has the force and effect of law. A published rule has the force and effect of law if it (1) prescribes substantive rules—not interpretive rules, general statements of policy or rules of agency organization, procedure or practice; and (2) the agency promulgated the rules pursuant to a specific statutory grant of authority and in conformance with the procedural requirements imposed by Congress.

Under these tests, it is clear to the court that Rev.Proc. 84–58 is not binding on the I.R.S. Therefore, Toyota's contention that

it does not owe any interest for the tax year 6/30/79 is without merit.

### C. *Interest Assessment.*

■ As noted, the Certificate of Assessments and Payments states that on December 11, 1989, a "Restricted interest assessment" was made.

The legal and procedural significance and effect of this "restricted interest assessment" set forth on the Certificate of Assessments and Payments is hotly contested by the parties.

■ The essential reason for this legal dispute hinges upon whether this action is barred by the six year statute of limitations, which statute would have expired on March 5, 1990 were it not for execution of the waivers. Because, however, it is not duress for the IRS to use or to notify the taxpayer that it intends to use all lawful means either to assess or collect a tax, *Ballard v. Commissioner*, 54 T.C.M. (CCH) 580, 582 (1987); *Price v. Commissioner*, 43 T.C.M. (CCH) 18, 21 (1981), unless the actions of the IRS herein were unlawful, this action is not barred by the statute of limitations.[4]

In any event, Toyota asserts that the United States is confusing "accrued interest" with "assessed interest". Toyota contends:

> [I]f the IRS made an interest assessment ... on December 11, 1989, it violated the provisions of 26 U.S.C. § 6333(d) in failing to provide Toyota ... thirty days notice before taking enforced collection action. The IRS also violated the provisions of 26 U.S.C. § 6303 by failing to give notice to Toyota ... within 60 days after the making of the assessment.
> In the event that no interest assessment was made on December 11, 1989, the Internal Revenue Service violated the provisions of 26 U.S.C. §§ 6201 and 6601 requiring that interest is to be assessed and collected in the same manner as taxes.

The court is persuaded that Toyota's position is not correct. It must be kept in mind that in 1984 the IRS assessed tax liability and assessed interest and penalty with respect to that assessed tax liability. It is clear that the only reason the IRS made the "restricted interest assessment" on December 11, 1989 is because it was determined as the result of an internal IRS audit that Toyota had not paid the interest in full that had been assessed in 1984 and had accrued on a daily basis thereafter. In other words, while Toyota implies that the "restricted interest assessment" on December 11, 1989 is a new or different matter, it really is not. It is simply a continuation, if that is the right word, of the previously assessed interest.[5] In this regard, it is noted that Toyota does not contest that there is unpaid accrued interest owing because of the tax liability assessments made on March 4, 1984.

■ 26 U.S.C. § 6601(e)(1) provides in pertinent part:

> (e) Applicable rules.—Except as otherwise provided in this title—
>> (1) Interest treated as tax.—Interest prescribed under this section on any

---

**4.** Even if they were unlawful, it does not necessarily follow that this action is barred by the statute of limitations. *See discussion infra.*

Furthermore, as the United States argues, the IRS did not need to provide Toyota with the notice and demand required by statute because these provisions only apply to prevent the IRS from administrative collection procedures. The failure to give notice and demand does not in and of itself prevent the collection of taxes, interest or penalties by judicial action. *United States v. Chila*, 871 F.2d 1015, 1018–1019 (11th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 498, 107 L.Ed.2d 501 (1989); *see also Security Indus. Ins. Co. v. United States*, 830 F.2d 581, 586–587 (5th Cir.1987); *United States v. Berman*, 825 F.2d 1053, 1057–1060 (6th Cir.1987). Thus, the only relevance to this action of Toyota's arguments concerning the need to and/or failure to give notice and demand as required by statute pertains to Toyota's assertion that the two Form 900 Tax Collection Waivers extending the statute of limitations to file this action are void because they were executed under duress, thereby barring this action because of the expiration of the statute of limitations.

**5.** The court is aware that the IRS had mistakenly closed the 6/30/79 account as fully satisfied. However, the court looks on that as simply being a mistake. It did not make less due the interest that was due and continued to accrue because of the Closing Agreement in 1984.

tax shall be paid upon notice and demand, and shall be assessed, collected, and paid in the same manner as taxes. Any reference in this title (except subchapter B of chapter 63, relating to deficiency procedures) to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax.

An assessment is made "by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary." 26 U.S.C. § 6203. Assessment, under the Code, is essentially a bookkeeping notation made when the Secretary or his delegate establishes an account against the taxpayer on the tax rolls. *Laing v. United States*, 423 U.S. 161, 170 n. 13, 96 S.Ct. 473, 479 n. 13, 46 L.Ed.2d 416 (1976); *United States v. Krasnow*, 548 F.Supp. 686 (S.D.N.Y.1982). There is no authority cited by Toyota or of which the court is aware that requires the Internal Revenue Service to make a separate assessment of interest on an assessed tax liability in order to collect that interest. As the United States asserts:

> Interest accrues on a daily basis pursuant to Section 6601 on underpayments of tax. Interest is thereafter assessed or posted to the taxpayer's account on a periodic basis. There is no authority that requires the government to provide notice and demand every time interest is assessed to a taxpayer's account. Since interest accrues on a daily basis, to take Toyota's argument to its logical conclusion, in order to fully collect all interest, the government would need to provide the taxpayer with a separate notice of and demand for accrued interest.

Toyota contends in reply that the United States' position is not tenable:

> The Commissioner [sic] asserts ... that, 'A Notice and Demand is not necessary every time an interest assessment is made.' The Commissioner [sic] cites no authority, statutory or casewise, to support its position. Again, the Commissioner attempts to confuse accrual of interest with an interest assessment. Where an interest assessment is made, in fact, Notice and Demand is required, pursuant to the explicit language of the statutes, 26 U.S.C. §§ 6303 and 6601 and the regulations thereunder.

However, during his deposition, Mr. Stiffler testified as follows:

THE WITNESS: To my knowledge, the general assessment is when a return, for example, is filed, and there is an additional assessment from an audit that the tax is determined, and on that date there is a form called a 23 C that is prepared for all assessments during that day and I believe it's the Director of our Service Center that signs that document.

MR. PINATELLI: Q. Is that the only assessment that takes place by the Internal Revenue Service of a taxpayer?

A. The only assessment?

Q. You mentioned the assessment for tax which is pursuant to a filing of a tax return or pursuant to a finding of a tax due pursuant to an examination. Are there subsequent assessments that are made against a taxpayer?

A. There is accruals and postings that aren't the 23 C assessments that I have talked about.

Q. Are those postings and accruals referred to as assessments?

A. Just in general terms, yes.

Q. Speaking in general terms, does the Service set up a coding for those postings or adjustments?

A. A coding?

Q. On a transcript of account that either a Revenue Officer or a taxpayer may review.

A. You mean to reflect that this is interest or penalty or tax?

Q. Yes.

A. Yes.

Q. Are there codings for assessment of tax?

A. Yes.

Q. What is that code number?

A. Normally TC 150. TC 300 would be an additional assessment from an audit.

Q. And what is the code number for assessments of a penalty?

.       .       .       .       .

THE WITNESS: TC 240.

MR. PINATELLI: Q. And is there a code number for assessment of interest?

A. Normally that's a computer-generated assessment. Do you want the code number on that?

A. Yes. I'm asking whether there is a code number.

A. Yes.

Q. Now, when an assessment is made, who is the person that makes that assessment?

MR. DARMSTADTER: What kind of assessment? You mean a 23 C assessment?

MR. PINATELLI: No.

MR. PINATELLI: Q. Let's talk about an interest assessment. Who is the person that posts that assessment?

A. Interest is normally accrued and posted by the computer. It's a computer-generated assessment based upon accruals.

Q. Are there situations where interest is not posted by the computer?

A. Yes.

Q. What are those situations?

A. I don't know.

Q. When they are not posted by the computer, how are they posted?

A. With the limited knowledge I have, in the Fresno Service Center, there are units of people there that analyze those accounts, determine the posting of additional interest or penalties and that bring that about.

Q. You don't know who those people are that make those posting of interest assessments?

A. No, I don't.

Q. How do you know when an interest assessment has been made?

A. Our work is on an assigned basis and a document or piece of paper is generated to us to show us that there are taxes, penalties or interest that might be due from an individual.

Relying on this testimony, the United States argues:

The legal procedures and requirements necessary for the government to make an interest assessment differ greatly from those necessary to make a standard tax assessment. In order to make a formal tax assessment, an assessment officer (appointed by the district director) must sign a summary record of assessment (Form 23–C) setting forth the identity of the taxpayer and the nature, amount and period of the tax assessed. See 26 C.F.R. § 301.6203–1 ... The date of the assessment is the date the Form 23–C is signed by the assessment officer ... This assessment date or 23–C date is very important in that it tolls the limitations period on assessment under Section 6501 and starts the running of the limitations period on collection under Section 6502. It is also this date of tax assessment that triggers the notice and demand requirements under Section 6303. These procedures should be contrasted with the procedures for making an interest assessment. Although the term 'assessment' is used when interest is posted to a taxpayer's account, a formal summary record of assessment or 23–C Form is not prepared ... The interest is simply automatically or manually posted to the account as a computer generated assessment ... A separate statute of limitations is provided for the assessment and collection of interest under Section 6601(g). Interest under Section 6601 is, of course, dependent upon an underlying tax obligation and accrues and is compounded on a daily basis.

Toyota responds that Stiffler's deposition testimony is false. Toyota's argument is extremely opaque:

Exhibits E (pp. 1–2), J (p. 7), and K (pp. 2 & 3) (Transcripts of Account) (# 37, 42, 56, 58, 60) to Officer Stiffler's testimony, (attached hereto with relevant portions highlighted in yellow) along with Form 4340 [the Certificate of Assessments and Payments], on its face (# 37) establish that the interest assessment (Code 340) (23–C) made on March 5, 1984 was identical to the interest assessment made on December 11, 1989. That is, each time an interest assessment is made, the Commissioner follows the prescribed form for doing such.

The court cannot agree with the inference sought to be drawn by Toyota. None of the exhibits referred to by Toyota are the Form 23–C referred to by Stiffler in his deposition and the United States in the above-quoted argument. These exhibits do establish that the code for additional tax assessed is 670 while the code for interest assessed is 340. However, the court does not read anything in Stiffler's deposition testimony or the United States argument suggesting that the "restricted interest assessment" entered on the Certificate of Assessments and Payments on March 5, 1984 was also entered on Form 23–C. The only possible indication of this is on Exhibit K. On Exhibit K, also called a Transcript of Account, is a column captioned "23 C Date or Memo Entries". However, the caption of this column does not, to the court's mind, establish that the interest assessments at issue here were handled the same as the tax assessment. Therefore, the court does not think Stiffler's testimony or the United States' argument therefrom have been shown by Toyota to be false.

In the court's opinion, Toyota's position hinges upon the use of the word "assessment" in connection with the December 11, 1989 entry on the Certificate of Assessments and Payments. If, in law, the IRS is not required to make an "assessment" in order to collect this interest, it is not really relevant what the IRS called the entry. In this regard, Mertens, 14 *Law of Federal Income Taxation* § 49D.01 states:

As a general rule, the Service may not make an assessment of taxes until:

(1) a notice of deficiency or a '90–day letter' has been mailed to the taxpayer;

(2) the expiration of the 90–day period (or 150–day period if the notice was addressed to a person outside the United States); or

(3) if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final.

Here, however, Toyota, in response to an argument being made by the United States, asserts that it has never contended that the IRS has violated the deficiency provisions set forth in 26 U.S.C. § 6212. This concession also persuades the court that the IRS is not required to separately "assess" this interest before its collection.

The United States further argues that Toyota did receive notice of intent to levy and demand when the IRS sent a Final Notice to Toyota on July 27, 1987. Noting that multiple levies may be made to collect an assessment even though only one Final Notice was sent to the taxpayer, 26 U.S.C. § 6331, the United States argues:

Although the 7/27/87 Final Notice did not include all of the interest sought by the 3/2/90 levies, much of which had not yet accrued, there is no requirement that the United States send a supplemental Final Notice to collect interest which has accrued on an assessment since the initial Final Notice was served. In fact, such a requirement would in effect defeat the government's ability to fully collect accrued interest by levy.

Toyota responds that this argument ignores the fact that the assessment at issue was not made until December 11, 1989 and Section 6303(a) specifically requires that Notice and Demand be given after the assessment.

The validity of this argument hinges upon the resolution of the issues set forth above. Consequently, the court concludes that Toyota's position is without merit.

Toyota further argues that the United States' contention ignores the fact that the IRS's records had shown that the amounts demanded to be paid by the July 27, 1987 Final Notice had been paid. However, it is not disputed by Toyota that the sending of the letter of full satisfaction of the 6/30/79 liability was a mistake because the interest assessed on March 5, 1984 and accrued thereafter had not in fact been paid.

The United States further argues that the 3/2/90 levies were not illegal because the financial institutions involved did not react to the levies or turn any property over to the United States. In so arguing, the United States refers the court to *Callahan v. Haxton*, 84–2 U.S.T.C. (CCH) 9734 (M.D.Fla.1984), *aff'd*, 763 F.2d 417 (11th

Cir.1985). In *Callahan,* the district court ruled in pertinent part as follows:

> The plaintiff alleges that the IRS's levy ... was invalid because the Notice of Levy was mailed only nine days after the IRS's demand for payment. However, in order for there to be a 'levy' for purposes of Section 6331, the property must be brought into legal custody through either actual or constructive seizure. Mere notice of levy does not constitute a levy ... The premature sending of a notice of levy, although not a proper procedure, does not render the underlying levy illegal....
>
> In the instant case notwithstanding the dispute regarding when W–G Development Corporation actually received the notice of levy, it is undisputed that the company did not react to the notice until May 31, 1983—over twenty days subsequent to the notice. The plaintiff had over ten [now 30] days notice before the levy on his property. Accordingly, the IRS's levy was not untimely.

Relying on *Callahan,* the United States argues:

> [I]t is undisputed that the levies in question were released on the very same day that they were served. There is absolutely no evidence to indicate that either Bank of America or Toyota Motor Credit Corporation reacted to the levies or restricted Toyota's account in any manner. In this regard, it should be noted that both of these financial institutions were required to hold any assets belonging to Toyota for twenty-one days from the date of receiving the levies before surrendering any property to the United States. This twenty-one day hold provision is required pursuant to Section 6332(c) and is specifically set forth in the instructions on the notices of levy ... Therefore, since neither institution re-

acted to the levies, the levies were not unlawful even if the Court should find that the United States was required to provide a subsequent final notice 30 days prior to levy following the interest assessment.

Toyota refers the court to *American Acceptance Corp. v. Glendora Better Builders,* 550 F.2d 1220, 1222–1223 (9th Cir. 1977).[6] There, the Ninth Circuit held that when the Internal Revenue Service notices of levy were served upon the corporate employer of the husband taxpayer, they had the effect of seizing the taxpayer's property held by that company, and a custodial relation was established, with the company holding the property of and for the Internal Revenue Service. No subsequent party could gain any rights in this property from the company because the property no longer belonged to the company, but rather all rights were held by the Internal Revenue Service. *American Acceptance Corp.* thus controls over the district court case from Florida.

Therefore, the court concludes that this argument by the United States is not persuasive.

However, the court rules that the IRS's actions were lawful under the circumstances of this action.

### D. *Duress.*

■ Even if the court were to have concluded that the actions of the I.R.S. were not lawful, the court is persuaded that the United States is entitled to summary judgment that there was no duress as that term has been defined in the execution of the Tax Collection Waivers.

It is not disputed by Toyota that only two cases have ruled in favor of the taxpayer and invalidated a waiver extending a limitations period because of duress. The two cases are *Robertson v. Commissioner,*

---

**6.** Toyota also argues that *Callahan* is wrong and is not persuasive authority because it relied upon cases interpreting § 3690 of the 1939 Internal Revenue Code and both the language of the statute and the procedures followed by the IRS at that time are significantly different from those which exist today. Toyota, however, does not set forth the significant differences or ex-

plain why they make *Callahan* inappropriate authority. In addition, Toyota makes reference to *Bothke v. Fluor Engineers and Contractors, Inc.,* 713 F.2d 1405, 1414 (9th Cir.1983). However, as will be discussed more fully later in this memo, this citation is without value. Consequently, the court finds these contentions to be of no assistance in resolving this issue.

32 T.C.M. (CCH) 955 (1973) and *Diescher v. Commissioner,* 18 B.T.A. 353 (1929). To *Diescher* and *Robertson* must be compared cases not finding duress in the execution of the extension. *Jarvis v. Commissioner,* 40 T.C.M. (CCH) 1225 (1980); *Price v. Commissioner,* 43 T.C.M. (CCH) 18 (1981); *Ravin v. Commissioner,* 41 T.C.M. (CCH) 1064 (1981); *see also J.H. Rutter Rex Mfg. Co., Inc. v. C.I.R.,* 853 F.2d 1275, 1282 (5th Cir.1988) and cases cited therein.

The court has reviewed all of these cases and the undisputed facts of this action. The court is persuaded that the United States is entitled to summary judgment with respect to the issue of duress. Mr. Thomas is an experienced businessman who is obviously very familiar with the IRS and who was aggressively advised by counsel concerning this matter prior to signing the consents. The degree of coercion involved here must be considered *de minimus* given that Mr. Pinatelli was well aware of available legal remedies. Moreover, the court cannot accept an inference of duress because the IRS could have simply told Toyota and Mr. Pinatelli that they were going to file this lawsuit and that, consequently, their arguments concerning the lack of notice and demand and the absence of assessment were irrelevant.

### E. *Counterclaim.*

■ Toyota's counterclaim is brought pursuant to 26 U.S.C. § 7433 and is alleged to be a compulsory counterclaim within the meaning of Rule 13(a), Federal Rules of Civil Procedure.

Even if the court were to find that the IRS's actions complained of by Toyota were unlawful, the United States asserts that it is entitled to summary judgment because the actions at most constitute negligence, there being no evidence that any employee of the IRS acted recklessly or intentionally disregarded any code provision or regulation as required by Section 7433(a) for recovery of damages against the IRS.

Toyota argues to the contrary. However, the court is not impressed with its argument.

Citing *Bothke v. Fluor Engineers and Constructors, Inc.,* 713 F.2d 1405, 1414 (9th Cir.1983), for the proposition that "[t]he Service ... with its expertise, is obliged to know its own governing statutes and to apply them realistically", asserts that Officer Stiffler was put on notice as to the pertinent code provisions governing the circumstances of the collection of the assessment of Toyota's taxes and that he either chose not to read those statutes or he chose to disregard their requirements. First of all, as Toyota acknowledges, *Bothke* does not involve Section 7433, but, rather, involves issues pertaining to qualified immunity. Toyota does not point out the subsequent history of *Bothke.* The full citation to *Bothke* is *Bothke v. Fluor Engineers and Constructors, Inc.,* 713 F.2d 1405 (9th Cir.1983), *vacated and remanded sub nom. Terry v. Bothke,* 468 U.S. 1201, 104 S.Ct. 3566, 82 L.Ed.2d 867 (1984), *on remand,* 739 F.2d 484 (9th Cir.), *on later appeal,* 834 F.2d 804 (9th Cir.1987). It is noted that in the 1987 opinion the Ninth Circuit affirmed the decision of the district court that the IRS officer enjoyed qualified immunity. Finally, the fact that Officer Stiffler was told by Toyota's counsel what Toyota's counsel thought was the appropriate way to proceed does not in and of itself prove that Stiffler acted recklessly or with intentional disregard of any code provision. This is true even if the court agrees with Toyota's legal position. Otherwise, any time an officer of the IRS makes a mistake or simply does not agree with a particular interpretation of the law, the United States is liable for damages under Section 7433. This clearly is not the intent of the statute.

■ Section 7433(d) sets forth limitations to actions under Section 7433(a). Thus, Section 7433(d)(1) provides in pertinent part:

A judgment for damages shall not be awarded under subsection (b) unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service.

The United States moves for summary judgment on the ground that Toyota has

failed to exhaust its administrative remedies because it has not paid the assessment and then filed a claim for refund as would be the usual proceeding pursuant to the Internal Revenue Code.

Toyota responds that this contention is without merit because its counterclaim is a compulsory counterclaim within the meaning of Rule 13(a), Federal Rules of Civil Procedure.

The court does not think that Toyota's contention has any merit. The scope of this counterclaim is governed by the concept of sovereign immunity. For example, the Federal Tort Claims Act, 28 U.S.C. § 2675(a) specifically excuses the exhaustion requirement with respect to "such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim." Section 7433 contains no such proviso and very specifically requires the exhaustion of administrative remedies in order to obtain a judgment. Moreover, as explained in Wright, Miller & Kane, 6 *Federal Practice and Procedure*, § 1427, pp. 194–195 (1990):

> The United States, as the sovereign, is immune from suit unless express permission to sue it has been granted by Congress. Therefore, in an action instituted by the government a counterclaim, like any other claim against the United States, can be interposed only when the government has waived its sovereign immunity from suit on that claim. It is possible, of course, to argue, that when the United States commences an action it assumes the position of a private litigant and submits itself of the court's full jurisdiction as to any counterclaim that defendant might interpose. However, the courts have firmly rejected this theory of a general waiver by implication.

Consequently, the United States is entitled to summary judgment on Toyota's counterclaim on this ground.

ACCORDINGLY, IT IS ORDERED that the United States' Motion for Summary Judgment is granted and that Toyota of Visalia, Inc.'s Motion for Summary Judgment is denied.

JUDGMENT TO BE ENTERED FOR THE UNITED STATES.