UNITED STATES of America,
Plaintiff,

v.

INDIANAPOLIS BAPTIST TEMPLE,
Gregory Jerome Dixon, and NBD
Bank, Inc., Defendant.

No. IP 98–0498 C B/S.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Jan. 19, 1999.

Harold Bickham, Asst. U.S. Attorney, Indianapolis, IN, Douglas Snoeyenbos, Trial Attorney, Tax Division, United States Department of Justice, Washington, DC, for plaintiff.

Albert F. Cunningham, Redding, CA, Gregory J. Dixon, Indianapolis, IN, Robert E. Johnson, Kreig Devault Alexander & Capehart, Indianapolis, IN, Steven L. Yount, Indianapolis, IN, for defendant.

*ENTRY ADDRESSING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT INDIANAPOLIS BAPTIST TEMPLE'S MOTION FOR SUMMARY JUDGMENT*

BARKER, Chief Judge.

## I. BACKGROUND

### A) *THE CHURCH*

This matter comes before the Court on Plaintiff United States of America's (United States) and Defendant Indianapolis Baptist Temple's (IBT) cross motions for summary judgment on Plaintiff's claim that IBT owes the United States over $5,319,750.27 for unpaid social security and federal income tax withholding.[1] IBT does

---

1. Hereinafter, we will refer collectively to social security taxes and federal income taxes as "federal taxes" or "federal tax laws."

not dispute the accuracy of the tax assessment figures. Rather, it contends that (1) the First Amendment bars the application of federal tax laws to IBT, and (2) the tax assessments relied upon by the United States were not made against IBT.[2] For the reasons discussed below, Defendant's motion for summary judgment on First Amendment grounds is *DENIED* because the federal tax system as applied to IBT does not violate either the Free Exercise Clause or the Establishment Clause of the First Amendment. We reserve further rulings on the motions for summary judgment pending supplemental briefing by the parties.

IBT is an independent Baptist church, defining itself as a New Testament Church. One of its principle tenants is that Jesus Christ is the sole and exclusive head of the church. The church was founded in March 1950 and was subsequently incorporated as a not-for-profit corporation on October 27, 1950. IBT began operating at 2711 South East Street, in Indianapolis, Indiana, and has been at that location ever since.

As a not-for-profit corporation, IBT claimed tax exempt status and obtained federal employer identification number 35–1037016. Thereafter, in 1983, the church membership decided to manage the church's affairs as an unincorporated religious society, rather than as a corporation. As part of the transition, the corporation's assets were transferred to the unincorporated religious society and the articles of incorporation were amended to limit the corporation's purpose to "continu[ing] any litigation in which the corporation may have been involved prior to 6–26–83 and any future litigation and to continue such financial obligations and legal responsibilities as have not been assumed by Indianapolis Baptist Church, an unincorporated Church." (Exhibit 2 to Dixon Dec.). The next year, the articles of incorporation

were again amended to change the name of the corporation from Indianapolis Baptist Temple, Inc. to "Not a Church, Inc." Two years later, on July 31, 1989, Not a Church, Inc. was administratively dissolved by Indiana's Secretary of State.

Meanwhile, in May of 1987, the unincorporated religious society known as Indianapolis Baptist Temple transferred all of its assets to Gregory Jerome Dixon, the church's pastor, as trustee.[3] After February 15, 1994, the society held title to real property located in Indianapolis, Indiana and known as 2711 South East Street and 339 West Cragmont Drive. (Government's Exhibits C, D).

### B) *TAX ASSESSMENTS*

On February 15, 1994, the Internal Revenue Service (IRS) made an assessment of tax, interest, and penalties totaling $3,498,-355.62 against "Indianapolis Baptist Temple" for unpaid social security and federal income tax withholding, including interest, delinquency penalties, failure to deposit penalties, and failure to pay penalties for the years spanning 1987 through 1992. The IRS identified the assessed entity with federal employer identification number 35–1037016. Despite notice and demand, IBT has not paid the social security and income tax withholding liabilities at issue. Together with interest and other statutory additions that have accrued, there remains due and owing to the United States with respect thereto, the sum of $5,319,750,27, plus interest and other additions pursuant to law accruing after July 26, 1998. (Keith Clayton Declaration).

### II. *SUMMARY JUDGMENT STANDARDS*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any materi-

---

**2.** IBT's request for oral argument is *DENIED*.

**3.** Dixon is a co-defendant in this action, but is not a party to the summary judgment motions at issue.

al fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a jury to return a verdict in favor of the non-moving party on the particular issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Methodist Med. Ctr. v. American Med. Sec., Inc.,* 38 F.3d 316, 319 (7th Cir.1994). "This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Sample v. Aldi Inc.,* 61 F.3d 544, 547 (7th Cir.1995).

In resolving a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movants. *Patel v. Allstate Ins. Co.,* 105 F.3d 365, 366 (7th Cir.1997); *Spraying Sys. Co. v. Delavan, Inc.,* 975 F.2d 387, 392 (7th Cir.1992). However, we must not "ignore facts in the record merely because they are unfavorable.... [A non-movant] gets the benefit of the doubt only if the record contains competent evidence on both sides of a factual question." *Patel,* 105 F.3d at 366. Thus, if genuine doubts remain, and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *Shields Enters., Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir.1992); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989).

### III. *DISCUSSION*

Plaintiff asks us to enter judgment in its favor and against IBT for over $5,319,-750.27 for unpaid social security and federal income tax contributions, and to foreclose on tax liens it has against IBT's real property. Defendant rejoins that (1) the

---

4. Plaintiff concedes that the federal tax scheme conflicts with IBT's religious doctrine.

5. While we do not share IBT's belief that "[t]his case is the most important and legally significant case involving the Religious Liber-

First Amendment bars Plaintiff's claims, and (2) it is not the entity assessed by the IRS.

### A) *THE FIRST AMENDMENT DOES NOT BAR PLAINTIFF'S CLAIM*

■ IBT first seeks refuge in the First Amendment, maintaining that the federal tax system violates the First Amendment's free exercise and establishment clauses by (1) forcing IBT to pay taxes, in contravention of their basic religious convictions, and (2) giving preference to religions whose doctrine is not offended by the federal tax system.[4] Unfortunately for IBT, the United States Supreme Court does not share its creative interpretations of the First Amendment, making resolution of this issue rather straightforward.[5]

The Supreme Court in *United States v. Lee,* 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982), addressed whether social security taxation violated the Free Exercise Clause of the First Amendment. In *Lee,* a member of the Old Order Amish, who believe that there is a religiously based obligation to provide for fellow members the kind of assistance contemplated by the social security system, employed several other Amish as workers on his farm and in his carpentry shop. For several years, the Amish employer refused to withhold social security taxes from his employees' pay or to pay the employer's share of the tax. After the IRS assessed the employer for the unpaid taxes, he paid a portion thereof and then sued for a refund, claiming imposition of the tax violated the First Amendment. On direct appeal, the Supreme Court reversed the district court's ruling that the imposition of the social security tax was unconstitutional.

ty Clause of the First Amendment of the Constitution of the United States since its adoption by Congress on August 20, 1789," we do recognize its importance and significance to the parties.

In reaching its conclusion, the Court recognized that compulsory participation in the social security system may "interfere[ ] with the free exercise rights of [religious groups]." *United States v. Lee*, 455 U.S. at 257, 102 S.Ct. at 1055. The Court also recognized, however, that the state may justify such an infringement by demonstrating that the infringement is essential to the accomplishment of an overriding governmental interest. *Id.* at 257–58, 102 S.Ct. at 1055. The Court then found that the broad public interest in maintaining certain sound tax systems is such an interest. *Id.* at 260, 102 S.Ct. at 1056–57. After noting the importance of and strong similarity between the income tax and social security tax systems, the Court concluded that the broad public interest in the maintenance of these systems was of such a high order that religious belief in conflict with the payment of the respective taxes provides no constitutional basis for resisting them. *Id.* Thus, at least with respect to the payment of income taxes and social security taxes, the Court has determined that the balance between the private interest in religious freedom and the government interest in tax collection and maintenance of a functioning tax system must be struck in favor of the governmental interest. *See also Hernandez v. Commissioner*, 490 U.S. 680, 699–700, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989).[6]

*Lee* addresses the same issue now raised by IBT. We are bound by *Lee*[7] and, thus, must *DENY* IBT's motion for summary judgment on Free Exercise grounds.

IBT's Establishment Clause challenge also falls flat. To pass muster under the Establishment Clause, the tax system must have a secular legislative purpose, its primary purpose must neither advance nor inhibit religion, and it must not foster an excessive entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). The Supreme Court in *Jimmy Swaggart Ministries v. Board of Equalization of California*, 493 U.S. 378, 394, 110 S.Ct. 688, 698, 107 L.Ed.2d 796 (1990), held that "it is undeniable that a generally applicable tax has a secular purpose and neither advances nor inhibits religion." Thus, the only issue remaining is whether the federal tax laws foster an excessive entanglement with religion.

The Court's decision in *Jimmy Swaggart Ministries* guides us once again, holding that "generally applicable administrative and record keeping regulations may be imposed on religious organizations without running afoul of the Establishment Clause." *Id.* at 395, 110 S.Ct. 688. Such regulations are, at the very least, as entangling as the federal tax laws. In fact, carving out an exception to account for conflicting religious beliefs would result in the very entanglement that IBT seeks to prevent, since it would necessarily require the IRS to examine the sincerity of a person's religious beliefs.

---

6. IBT attempts to distinguish all of the applicable case law by pointing out that none of the cases involve a New Testament Church. For the Court's purposes, this is a distinction without a difference. We find no reason not to apply the clear principles set forth by the Supreme Court to IBT simply because it designates itself as a New Testament Church.

7. The Supreme Court in *Employment Division, Depart. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), abandoned the balancing test employed by *Lee* and announced the less strenuous rule that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice. Under *Smith*, IBT's Free Exercise Clause argument is even less compelling than under *Lee*. Nevertheless, in 1994, the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb–1, was passed, superseding *Smith* by requiring both federal and state laws to comply with the balancing test, as set forth in *Lee* and *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). Hence, *Lee* is the standard today and we must follow it.

This view is consistent with the Third Circuit's decision in *Bethel Baptist Church v. United States*, 822 F.2d 1334 (3rd Cir. 1987). In that case, Bethel Baptist, an independent Baptist church, claimed that social security taxation violated the Establishment Clause of the First Amendment because it required governmental supervision and inspection of the Church's records. The Third Circuit rejected the church's argument, holding that the resulting entanglement between the government and the church was minimal, at best.

Accordingly, consistent with *Bethel Baptist* and *Jimmy Swaggart Ministries*, Defendant's motion for summary judgment on Establishment Clause grounds is *DENIED* because the federal tax system has a secular purpose, neither advances nor inhibits religion, and does not foster an excessive entanglement with religion.

B) *MORE DEVELOPMENT NECESSARY TO DETERMINE WHETHER DEFENDANT IS THE ASSESSED ENTITY*

The final issue is not as clear as the First Amendment questions. Defendant contends that the tax assessments relied upon by the Government in this action were not made against it. In support of its contention, Defendant points out that the IRS identified the assessed entity with federal employer identification number 35–1037016. That identification number was originally obtained by the corporation called Indianapolis Baptist Temple, which later changed its name to Not a Church, Inc. and, ultimately, was administratively dissolved in 1987. Defendant contends that it is not that corporation; rather, it is Indianapolis Baptist Temple, the unincorporated religious society.[8] Thus, it is not liable for the assessed taxes.

Defendant obviously is not the corporation that obtained the identification number at issue. That corporation has been dissolved and, in fact, did not exist during the time period when the taxes were assessed—1987 to 1994.[9] Rather, Defendant is an unincorporated religious society which was created in 1983 by the church membership to manage church affairs and hold title to church property. The society was given all the corporation's assets and apparently took over the corporation's role of managing the church. From 1983 to 1987, both the society and the corporation co-existed, with the society managing church affairs and the corporation's role limited to continuing any litigation in which it was involved. In 1983, the two entities shared the name Indianapolis Baptist Temple until the corporation changed its name the following year to Not a Church, Inc. While the society apparently managed church affairs, it never obtained a federal employer identification number.

The tax assessments at issue probably were intended to be made against the managing entity of the church, i.e. Defendant. We glean this from reviewing the actual assessments and examining the items listed. The Government, however, glosses over the issue by simply arguing that Defendant and the assessed taxpayer constitute the same entity because they used the same name at one time. The Government does not even acknowledge the distinction between the corporation and the society. Thus, we are left with a slim factual record and no explanation by the Government for using the corporation's identification number in identifying the assessed taxpayer. We decline to rule on this issue under these circumstances.

■ Although Defendant may not be the same entity assessed by the IRS, we must note that Defendant nonetheless

---

8. IBT even suggests that it is neither a corporation nor an unincorporated religious society. Rather, it is a New Testament Church and nothing more. This position fails to recognize the legal nature of IBT, which the

record establishes to be that of an unincorporated religious society.

9. Further, Defendant is not identified as an incorporated entity in the caption.

could be held liable for the assessed taxes. Under Indiana law, a corporate entity generally is considered distinct, except when its separateness is abused and yields a result contrary to the aim of the law. *Winkler v. V.G. Reed & Sons, Inc.,* 638 N.E.2d 1228, 1232 (Ind.1994). In such a case, the court may disregard the corporate entity and assess liability appropriately. *Id.* Some courts have found the inability of the government to satisfy a delinquent income tax obligation to form a basis for disregarding a corporate entity. *See G.M. Leasing Corp. v. United States,* 514 F.2d 935 (10th Cir.1975), *rev'd in part on other grounds,* 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977).

The facts of this case may ultimately justify such action. The corporation and society appear to have many similarities, including the same people, facilities and assets. However, we are simply without sufficient facts to rule on this issue, and thus, invite the parties to address it in supplemental briefing.

## IV. *CONCLUSION*

For the reasons discussed above, we *DENY* Defendant's Motion for Summary Judgment on First Amendment grounds because the federal tax system does not violate either the Free Exercise Clause or the Establishment Clause of the First Amendment. We reserve further rulings on the pending summary judgment motions to allow supplemental briefing regarding whether the tax assessments relied upon by the Government were made against IBT and, if not, whether IBT nonetheless should be held liable for the assessed taxes. The United States is allowed 30 days from the date of this Entry to file a brief on these issues; IBT is allowed 20 days to file a responsive brief. The United States will have an additional 10 days to file a reply.

It is so ORDERED.